## MacDowell *versus* Ackley.

M. was a member of the Philadelphia Stock Exchange when in 1875 it amended its constitution by providing for a gratuity fund, out of which $2000 were to be paid to the representatives of every full member on his decease. M. paid certain assessments for the formation of this fund. In 1877 a further amendment was adopted by the Exchange, wherein it was provided "that any suspended member who shall have failed for three months to pay in full all gratuity dues and assessments, shall forthwith cease to be a full member for the purpose of" participation in the gratuity fund. M. failed to pay his regular quarterly dues for the several quarters from March 31st 1877 and ending June 30th 1878; also the annual sums payable to the gratuity fund December 1st 1877, and the several asssessments due from him to the gratuity fund by reason of the deaths of members which occurred on the 7th of August and 9th of September 1877, and in August 1878. On the 6th of August 1878 he was suspended for the non-payment of his regular quarterly dues. In April previous he had become insane, and in November 1878 he died. *Held*, that having subscribed to the constitution and by-laws, and the amendment of 1877 having been made in accordance therewith, he could not be permitted to question its validity, and was bound thereby. *Held, further*, that having failed to pay his dues and assessments for the benefit of the gratuity fund, he ceased to be a full member for the purposes of said fund. With his loss of full membership his right to the gratuity fund fell with it during his life, and there was nothing to transmit to his representatives.

February 25th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Error to the Court of Common Pleas, No. 2, of *Philadelphia county*: Of January Term 1880, No. 146.

Case stated for the opinion of the court wherein Blanche R. MacDowell, guardian of Caroline G. MacDowell was plaintiff, and Shreve Ackley and others, officers and members of the Philadelphia Stock Exchange, were defendants.

The case as stated in the nature of a special verdict, with power to the court to draw the same inferences of fact as a jury might draw, was in substance as follows:

James J. MacDowell, the deceased, father of Caroline G. Mac-Dowell, purchased a seat in The Philadelphia Stock Exchange, and was duly elected to membership therein on the 28th of August 1865. In December 1875, sect. 17, of the constitution, relating to gratuity fund, excepting the portion thereof hereinafter set forth, was passed.

The following are the material portions of said section:

1. Every full member of the Philadelphia Stock Exchange, in addition to all other payments which he is required under these by-laws to make, shall, at the time of his admission to the Philadelphia Stock Exchange, pay into the hands of the trustees thereof the sum of fifteen dollars, and the further sum of fifteen dollars, annually, upon the first day of December of each year. Upon the death of any full member of the stock exchange, he shall in addi-

tion, pay a further assessment, or sum, of ten dollars, to said trustees.

2. The trustees aforesaid, shall keep the fund arising from the payments and assessments made under this section of the by-laws, separate and distinct from all other funds of the Philadelphia Stock Exchange; said fund shall be styled "The Gratuity Fund," and shall be used solely for the purposes hereinafter mentioned.

3. All payments and assessments becoming due under this sec-. tion of the by-laws shall be charged against the membership of each member of the Philadelphia Stock Exchange, and shall be collected in the same manner, and have the same priority as all other fines, assessments and dues, due from the members of the Philadelphia Stock Exchange to the Exchange.

5. The trustees of the Philadelphia Stock Exchange shall, within thirty days after the death of any full member thereof, pay out of the gratuity fund herein mentioned two thousand dollars to the person or persons especially designated by said deceased member to receive the same. * * * In case he has not so designated any person to receive it, then, in the discretion of said trustees, either to his widow or to his child or children, as they may think best; and in case no widow, or child or children, survive him, and he has not designated any person to receive said sum in the manner above specified, then to his legal representatives. The said sum of money shall, in all cases, be a gratuity only, and shall be paid at the death of such member, clear and free of any and all assessments or claims of any kind whatsoever. * * *

6. * * * A full member for the purposes of this section shall be construed to mean a member owning a seat in the stock exchange, whether suspended or otherwise.

After the passage of this gratuity fund clause MacDowell paid a number of assessments made under its provisions, in fact all dues and assessments so made, except such as fell due as hereinafter stated.

On the 17th of November 1877 the following addition to section 17 of the constitution was duly made by the defendants. "That any suspended member, who shall have failed for three months to pay in full all gratuity dues and assessments, shall forthwith cease to be a full member for the purposes of this section; such member may be restored to such full membership by a favorable report of the standing committee, upon paying in full all arrears of gratuity dues and assessments."

There is no evidence that MacDowell was present or voted at the meeting or meetings at which said amendment was adopted, or that he in any way assented or agreed thereto, unless assent compulsory or acquiescent is to be inferred from the fact of membership as stated herein, from the constitution of defendants, and from the fact that he never dissented upon any occasion. He could have

[MacDowell *v.* Ackley.]

been present at meetings and assented if he desired to do so, hav
ing the same privileges as the other members of the exchange.
MacDowell's dues began to be in arrear in 1877, after which time
he continued indebted to the said stock exchange until his death.
During this time his attention was frequently called to the fact of
this indebtedness by the secretary and treasurer of the exchange.

On August 6th MacDowell was duly suspended for non-payment
of dues to the stock exchange, and upon the same day a letter
stating the fact was mailed to his address.

Upon both occasions a printed copy of the addition to section 17,
adopted November 17th 1877 was enclosed to him.

On April 28th 1878 · MacDowell was duly confined, on certifi-
cates of two physicians, in the Pennsylvania hospital for the
insane.   At the time of his confinement in the hospital he was
without mental power sufficient to comprehend business of any
kind, and remained in that condition without lucid intervals, and
without being permitted to leave said hospital until the date of his
death.

He died on the 26th of November 1878, intestate, leaving the
said Caroline G. MacDowell, his only child, a minor about four
years of age, his sole heir.   He left no letter designating the per-
son to whom the gratuity should be paid.   At and prior to his death
he was insolvent, owing to members of the Philadelphia stock
exchange a larger sum than the proceeds of his seat.   The pro-
ceeds of his seat have not been distributed, but are held by the
treasurer of the stock exchange.

His indebtedness to the Philadelphia Stock Exchange at the
time of his death (said indebtedness being the same then as at the
time of his suspension), amounted to $61.15, and was as follows:
March 31st 1877 to August 6th 1878, annual dues, $16.15.
Assessment due by him on death of members, $30.   Annual dues,
gratuity fund, $15.   The said stock exchange has, since his death,
in accordance with the provisions of its constitution, sold his seat
or membership for the sum of $1500, and have applied $61.15 of
the said sum to the payment of the dues and assessments above
stated.

All of these dues were debts due by him prior to his suspension.
During the period of his suspension, that is, between August 6th
1878 and November 26th 1878, several gratuity assessments and
one regular quarterly subscription to the stock exchange, became
due and payable by all non-suspended members, to the exchange.
These sums would have been due and payable by MacDowell, but
for the fact of his suspension, as aforesaid; but on that account, he
was not charged with nor did he pay any of them, nor has any
deduction for any portion of said sum been made from the proceeds
of his seat.

If the court be of the opinion, that the plaintiff is entitled to the

[*MacDowell v. Ackley.*]

above-mentioned gratuity, then judgment for the plaintiff in the sum of $2000, together with whatever interest the court may hold to be due thereon. If not, then judgment to be entered for the defendant.

The case was referred to a referee, under the provisions of this Act of May 14th 1874, who found—

"1. That J. MacDowell, the father of the plaintiff, Caroline G. MacDowell, was, as a member of the Philadelphia stock exchange, subject to the provisions of section 17, paragraph 6, of the constitution thereof, as amended on November 17th 1877.

"2. That being so subject, the said MacDowell, having been suspended from the Philadelphia stock exchange on August 6th 1878, and not having paid in full his assessments and dues to the gratuity fund for three months thereafter, ceased, ipso facto, at the expiration of that period, to be a full member of the exchange, *qua* this gratuity fund.

"3. That the defendants, after the death of the said MacDowell, and the sale of his seat therein, deducted from the proceeds of the latter, the amount of the dues and assessments owing by MacDowell to the gratuity fund, at the time of his suspension from the exchange, namely, $61.15, does not in the opinion of the referee, alter or affect his decision upon the question of the right of the said MacDowell's representatives to the benefits of the gratuity fund.

"The retention of these dues and assessments by the exchange, after the insolvency and death of MacDowell, from the proceeds of the sale of his seat, was not in the opinion of the referee a waiver, by the exchange of the provisions of its constitution above referred to; and by virtue of which, the referee has decided, that the said MacDowell ceased to be a full member for the purposes of this gratuity fund.

"The referee is of opinion, therefore, that judgment should be entered upon the case stated for the defendants, and enters judgment accordingly."

Exceptions were filed to this report, which the referee overruled, and the plaintiff took this writ and alleged, that the referee erred in entering judgment for the defendants.

*P. F. Rothermel, Jr.*, for plaintiff in error.—The plaintiff contends that her right to recover should be determined by the contract, as evidenced by the provisions of the constitution on the subject of the gratuity fund, as adopted in December 1875; and that, MacDowell could not be affected by the addition of 1877, to which he did not assent.

When the Stock Exchange adopted the gratuity fund section, it converted itself into a mutual life insurance company; and, as in all such companies, the insured were members of the company, and bound by its rules and regulations. But the right of each member,

[MacDowell *v.* Ackley.]

as an individual insured in the company, is not merged in his membership; so far as the contract with the company which entitles his nominees, &c., to $2000, on his death, is concerned, he is as much a stranger to the company as if he were not a member; though bound by the amendments to the constitution and by-laws as a member of the body, collectively, his contract with them, in which he stands as a stranger, cannot be affected without his express consent: Insurance Company *v.* Connor, 5 Harris 136; Beadle *v.* Chenango County Mutual Fire Ins. Co., 3 Hill 161; Great Falls Mutual Fire Insurance Company *v.* Harvey, 45 N. H. 292; N. E. Mutual Fire Ins. Co. *v.* Butler, 34 Me. 451; Angell & Ames on Corporations 242. To hold that MacDowell forfeited his interest in the gratuity fund, is to hold, that a forfeiture will be decreed for breach of a condition, where no injury was inflicted on the other party, and the breach was not wilful. In the present case, no injury could be suffered by the exchange, as they were amply protected by their lien on MacDowell's membership.

As the stock exchange received the full amount claimed by them for gratuity, dues and assessments, from the proceeds of the sale of MacDowell's membership, and applied the same to the liquidation of his indebtedness to them on that account, it is clear from the authorities, that they have waived the forfeiture: Lycoming County Mutual Ins. Co. *v.* Schollenberger, 8 Wright 259; Froehlich *v.* Atlas Life Ins. Co., 47 Mo. 406.

*A. Sydney Biddle,* for defendants in error.—MacDowell was suspended from active membership on account of the non-payment of his regular (not gratuity) dues, by a rule in existence when he joined, and the validity of which is acknowledged. By the gratuity fund rule, as originally enacted, mere suspension from the exchange did not debar the suspended member from the benefit of the gratuity fund; and, if MacDowell had continued to make the payments required by that rule, for the perpetuation of the gratuity fund, his child would undoubtedly have been entitled to have received the sum of $2000 upon his death.

If this rule were treated as an ordinary policy of insurance, the contract by the Exchange to pay the gratuity, was dependent upon the contract by MacDowell to pay his assessments, and to pay those assessments upon certain dates. If the law were otherwise, the legal representative of an insured, whose policy had lapsed by non-payment of premiums, could always elect to take the benefit of the policy, by paying the accrued premiums after the death of the deceased.

The amendment of 1877 was undoubtedly binding on MacDowell. The amendment was passed in November 1877. MacDowell remained an active member until August 1878, nearly nine months after the passage of the amendment, without the expression of dis-

[MacDowell *v.* Ackley.]

sent of any kind.  He remained *compos mentis,* so far as we know, until April 28th 1878, over five months after the resolution was passed.

Very distinct evidence must be produced before waiver by an association of this character would be inferred.  But there was no waiver.  The case here is in no way analogous to that of life insurance.  No action could have been maintained, even if there had been a balance, until the finding of the arbitration committee (Thompson *v.* Adams, ante, page 55), which has not taken place; and the payment of the $61.15, was a mere transfer from one account to another upon the books of the owners of the fund. If the arbitration committee should, on the objection of one of MacDowell's creditors, find the transfer to have been improper, that sum must be restored, but the whole would still belong to the members of the Philadelphia Stock Exchange.

Mr. Justice MERCUR delivered the opinion of the court, May 3d 1880.

This was a case stated.  It was agreed that certain facts " be stated for the opinion of the court in the nature of a special verdict with power to the court to draw the same inferences of fact as a jury might draw."  Afterwards the matter was referred to a referee under the Act of 14th May 1874.  He decided in favor of the defendant, and entered judgment accordingly.  It may be that the referee was rather liberal in his inferences of fact under the submission; but no exceptions were filed, nor is any error assigned by reason thereof.  The complaint is to the entry of judgment in favor of the defendant.

Looking then at all the facts agreed on and found, the important ones are these.  The plaintiff sought to recover under a right claimed to have existed in her father James J. MacDowell at the time of his death.  In 1865, he became a member of the stock exchange.  An amendment to the constitution was adopted in 1875, for the benefit of all full members of the stock exchange who, in addition to all other payments, which under the by-laws he was required to make, should at the time of his admission pay to the trustees a sum specified, and the like sum annually on the first day of each December, and on the death of any full member a certain other specified sum.  The fund thus to be created was styled the " Gratuity Fund."  It was provided that within thirty days after the death of any full member, the nominee, widow, child or children, or legal representatives of those who were full members at the time of their death should be paid a gratuity of two thousand dollars.  It was also declared that a full member for this purpose should be construed to mean a member owning a seat in the stock exchange whether suspended or otherwise.  A further amendment to the constitution was adopted in November 1877.  It

[MacDowell *v.* Ackley.]

declares " that any suspended member who shall have failed for three months to pay in full, all gratuity dues and assessments, shall forthwith cease to be a full member for the purposes of" interest in the gratuity fund, but might be restored to such full membership by a favorable report of the standing committee " on payment of all arrears of gratuity dues and assessments."

MacDowell failed to pay his regular quarterly dues for the several quarters ending 31st March; 30th June; 30th September; and 31st December in 1877, and 31st March and 30th June 1878; also the annual sum payable to the gratuity fund 1st December 1877, and also the several assessments due from him to the gratuity fund by reason of the death of members on the 7th August, and 9th of September 1877, and in August 1878.

On the 6th of August 1878, he was suspended for the non-payment of his regular quarterly dues. In November following he died intestate, leaving the plaintiff his only child and heir, and did not designate to whom said gratuity should be paid. If he had a fixed interest in the fund the plaintiff is entitled to it. The question then is whether his failure to pay his dues and assessments, and his consequent suspension, worked a forfeiture of his contingent rights? The fact is unquestioned that he was not at the time of his death a full member, and the plaintiff was not entitled to any share of the proceeds of his seat under the constitution of 1877. The plaintiff contends that it is inoperative against her father, inasmuch as it is not shown that he was present or voted at the time of its adoption, or that he in any manner assented thereto; and by reason of insanity he was duly confined in the insane hospital from the 28th of April 1878 until his death. We answer:

1. The right of MacDowell in this gratuity fund was grafted on his existing membership in the stock exchange. The same power that created it could, in the manner prescribed, modify its enjoyment. It is conceded that all the forms required by the constitution and by-laws to amend the constitution were duly observed in the adoption of the amendment in November 1877. He was not then under any mental disability. If not then present he could have been had he so desired. He in no manner dissented therefrom. Having then voluntarily refrained from participating in the amendment, and not dissenting therefrom, we do not see how he could afterwards have denied its full effect. Nor could his dissent have relieved him therefrom. Having subscribed to the constitution and by-laws, and the change having been made in accordance therewith, he could not be permitted to question its validity. He could not enjoy the benefits of the fund without performing his part towards creating it. It was a fund kept separate from all other sources of revenue, and could be supported only by the payment of the several sums and assessments especially appropriated

[MacDowell *v.* Ackley.]

thereto. The case stated admits that from the time his dues began to be in arrear in 1877, he continued indebted until his death, and "during this time his attention was frequently called to the fact of his indebtedness by the secretary and treasurer of the exchange." He was liable to suspension for failing to pay his regular quarterly dues. For this he was suspended, after repeated notice of his delinquency. Thereafter, in the words of the constitution, he "failed for three months to pay in full all gratuity dues and assessments," and "forthwith ceased to be a full member for purposes" of this fund, and was so found by the referee.

2. He was in default in the payment of five separate quarterly dues; of two assessments to the gratuity fund; and of one annual dues to the same fund before he was committed to the hospital. Subsequent mental incapacity did not relieve him from the effect of previous neglect and refusal to discharge his legal and just duty. With his loss of full membership, under laws existing when he became a member, his right to the gratuity fund fell with it during his life, and there was nothing to transmit to the plaintiff.

Judgment affirmed.