## Amanda Manning et al., Appellants, *v.* Caroline Shoemaker et al.

*Unincorporated association—Property rights—Retiring members.*

Members of a religious society may voluntarily withdraw from it and enter another more consonant with their views, but when they do so they must be considered as abandoning to the adherents of the original constitution their rights to the property of the society when they leave.

*Articles of association—Binding effect on members.*

As between members, the articles of association are the fundamental rules by which the character of the association is to be determined.

A ladies' society organized in aid of a church but entirely independent of its control, is not affected in its property or membership rights by ecclesiastical secession of its members individually from the church proper. The disposition of the property of the society is properly to be made by a majority of its members in obedience to the articles of association.

Argued Dec. 7, 1897. Appeal, No. 51, Oct. T., 1897, by plaintiffs, from definitive decree of C. P. Lehigh Co., April Term, 1896, No. 2, in equity, dismissing plaintiffs' bill. Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Affirmed.

Bill, answer and proofs.    Before ALBRIGHT, P. J.

The facts sufficiently appear from the opinion of the court below:

1. In 1888 a number of ladies who worshipped as members of the congregation in Allentown known as Salem's Church formed an unincorporated association and named it the "Salem's Aid Society of the Evangelical Church of Allentown, Pa." Said church was under the discipline of the Evangelical Association of North America.

2. Said society adopted a constitution; therein it was declared that "the object of this Society shall be to raise money for said Church to dispose of it in such manner as the Society may agree upon" and further: "Any female member of the Church may become a member of this Society by paying an admission fee," etc.

3. The meaning of said provision concerning disposition of the money is that the society could appropriate it as it saw fit; the society was not bound to pay its accumulations into the church treasury; said two provisions are contradictory, and the reasonable construction is that this association of voluntary workers remained free agents, not that their savings could be taken from them by the church organization without their consent.

4. The provision about membership does not bear the construction, that a member must belong to the congregation worshipping at Salem's Church. It is not so written.

5. In 1891 differences arose between the clergy and laity composing the Evangelical Association of North America which it is not necessary to state here. The facts and law relating thereto are set forth in the report of the case of Krecker v. Shirey, 163 Pa. 534; said differences existed among the members of said congregation and of said society.

6. In July, 1891, an election for officers of the society was regularly held. Those ladies who adhered to what was known as the Bishop Dubs party in the Evangelical church were most numerous and they carried the election for the officers. The society then had $208.93, and a quilting frame. After said election the retiring treasurer paid to the new treasurer Mrs. Annie Stirk one of the defendants said sum.

7. Those members who adhered to the Bishops Bowman and Esher party in said church left the society at or shortly after the time of said election.

8. Said majority party remained and continued the organization and work of the society; they changed the constitution in 1892; one of the changes is a declaration that "the object of this society shall be to raise money to be used for the promotion of God's kingdom and to foster a spirit of unity among its members."

After the decision in October, 1894, of said case of Krecker v. Shirey, the said ladies (the defendants) who composed said society formed in 1888 and who had said sum or whatever sum was then in the treasury and the quilting frame and book of the constitution and accounts here claimed, ceased to be members of said Salem's congregation; they afterwards became members of a church under the jurisdiction of the " United Evangelical Church " which was formed by those who were dissatisfied with the controlling powers in the said Evangelical Association; it is a body independent of the Evangelical Association of North America. Said society used the money in their treasury to pay for a window in a church in the neighborhood, built by the United Evangelicals.

9. The plaintiffs while officers and members of a society called the Ladies' Aid Socity of the Salem's church are not officers and members of the society formed as aforesaid in 1888. Those who left the original society in 1891, while they composed a society with ladies belonging to other congregations who adhered to their party in the church division, did not constitute the original society in regular succession or in any sense. The society plaintiff was formed in 1894.

10. As already stated those who remained after said division in 1891—the defendants—composed the original society.

11. Of said defendants Caroline Shoemaker was at the time of the filing of this bill president, Maria Medlar, secretary, and Susan Swartz, treasurer of said society formed in 1888, but now composed of persons who are not members of said Salem's congregation nor of said Evangelical Association.

### CONCLUSIONS.

The court is of the opinion that the bill must be dismissed

(at cost of plaintiffs) because the plaintiff society is not the society that accumulated the property here sought to be recovered—and for the further reason that the society composed of the persons who remained after some of the plaintiffs left had the right to dispose of the money as they saw fit, and of course to retain it and the quilting frame and book.

Defendants' counsel may prepare and submit a form of decree.

The court has deemed it best to state its findings of facts and of law in its own language. Therefore the requests of counsel are not answered. They have been considered and proved of great value. They directed attention to material questions in the case.

Exceptions were filed on behalf of the plaintiffs, inter alia, as follows :

11. The court erred in finding and concluding as matter of law, that " the plaintiff society is not the society that accumulated the property sought to be recovered."

12. The court erred in finding and concluding as matter of law, " that the society composed of the persons who remained after some of the plaintiffs left had the right to dispose of the money as they saw fit, and of course to retain it and the quilting frame and book." .

They were dismissed by the court in the following further opinion :

The earnest and learned argument of plaintiff's counsel in support of the exceptions was made mainly for the purpose of establishing that the money accumulated by the original society was the property of Salem's congregation, of Allentown, of the Evangelical Association of North America, that said society or whoever had that money in hand was merely a trustee, that the society mentioned in the title designation of the plaintiffs in this action is the true trustee, that even if the society last alluded to is not regarded as the original society, then as Mrs. Metzger, Mrs. Weiand and several other plaintiffs were members of the original society, there ought still to be a decree against the defendants. He further contends that the members of the society who in 1891 espoused the Bishop Dubs side in the church controversy lost the right to membership and although they constituted the majority their action respecting the property here in dispute was illegal and void.

But said argument failed to convince the court that the accumulations of said society were the property of said Salem's congregation, or what is the same thing, were subject to the control of said congregation.   Therefore, the cases cited do not apply.

The following is the original constitution in full as written in the minute-book.

"Article 1.—This Society shall be known as the Salem's Aid Society, of the Evangelical Church, of Allentown, Pa.

"Article 2.—The officers of this Society shall be a president, a secretary and a treasurer, who shall discharge the duties generally devolving upon such officers and elected yearly.

"Article 3.—The Society meet once a week, Wednesday, is be to opened by reading of scripture and prayer.

"Article 4.—The object of this society shall be to raise money for said church, to dispose of it in such manner the society may agree upon.

"Article 5.—Any female member of the church may become a member of this Society by paying an admission fee of ten cents.   Five cents monthly thereafter shall be required as dues.

"Article 6.—Any male member of the church may become an honorary member of this Society by paying ten cents monthly.

"Article 7.—At any regular meeting seven shall constitute a quorum."

The society was not endowed by or for the benefit of the Evangelical Association, of North America.

Therefore, they could dispose of what they contributed or earned for any purpose that a majority might decide upon, unless, they by their compact of association agreed to the contrary.

Suppose it to be the fact that by "said church" in said 4th article is meant either said Salem's congregation, or the Evangelical Association, and that the declared object was to raise money for one of them.   Such devotion of the funds is inconsistent with the design "to dispose of it in such manner the society may agree upon," which is a reservation of power to appoint the object for which it shall be used, and the party to whom it shall be given.   If the article is taken to mean that the church shall apply the money as the society dictates, the result of the society's action in disposing would be the same.

Let us imagine that before any difference in the church existed, the society had resolved that a fund in its treasury should be used to further a specified object and the said congregation or association had determined that the same fund should be devoted to a different object named by it, then there would have been presented the question of the right to the fund. The same would have been the case if the congregation or association had demanded a sum in the society's treasury. Under either state of facts in a proceeding in law or in equity the society must have prevailed. It could not have been held that said independent voluntary association had bound itself to contribute to and work for the church in such a way that its funds could be taken against its will.

The ground of such decision would have been that the meaning of said article 4 was that the purpose was to aid the church but the society retained the right to devote its funds to any object that the majority of its members decided upon. As the church could not be accorded the fund in question pursuant to a direct claim, it follows that the society plaintiff or the members of the original society who are plaintffs, can not have a decree for it, after the money was disposed of according to the will of the majority of the society. For plaintiffs could demand the money successfully only on the ground that they are entitled to it as trustee of the church. They cannot recover it for their own personal purposes.

·The exceptions allege error because the court did not find the facts and hold the law governing the case to be as requested in plaintiff's points. Said matters of fact except so far as the same are passed upon in the original or this decision are immaterial, under the view taken by the court. The court is still of the opinion that the evidence warrants the conclusion heretofore stated, and that no other matters of fact are relevant.

April 5th, 1897 : the exceptions are dismissed.

*Errors assigned* among others were (6) in not finding as matter of law as requested by plaintiffs, as follows : " The Salem's Aid Society, of the Evangelical Church of Allentown, Pa., was an unincorporated association, organized within the Salem's Evangelical Church of Allentown, and was subordinate to, and a part and parcel of said church. The court should have so

found." (7) In not finding as matter of law as requested by plaintiffs as follows: "2. The money and property acquired and accumulated by said Salem's Aid Society, of the Evangelical Church, was for the use of the said Salem's Church exclusively, and could not be appropriated to any other purpose, or diverted from the trust for which it was raised. The court should have so found." (11) In not finding as matter of law as requested by plaintiffs, as follows: "6. Under the law and the evidence in this case, the plaintiffs are entitled to recover the money and property claimed in the bill, with interest on the money from July 1, 1891. The court should have so found." (20) In its opinion in passing on plaintiffs' exceptions in deciding as follows: "The society was not endowed by or for the benefit of the Evangelical Association of North America. Therefore they could dispose of what they contributed or saved for any purpose that a majority might decide upon, unless they, by their compact of association agreed to the contrary." (21) In its opinion in passing on plaintiffs' exceptions in deciding as follows: "The society retained the right to devote its funds to any object that the majority of its members decided upon."

*James S. Biery*, for appellants.

*R. E. Wright*, for appellees.

OPINION BY ORLADY, J., April 25, 1898:

The right of the appellants to maintain their bill in equity depends entirely upon their relation to the original association after participating in the election of officers in 1891, at which time the differences between the adherents of Bishops Dubs and Esher assumed a definite form in the withdrawal from the association of those who espoused the cause of Bishop Esher.

The constitution and the management of the affairs of the association show clearly that this association of ladies was entirely independent of the control of the church of which they were members. It has regularly continued its existence by meetings, elections of officers, and transaction of the business of the association in accordance with the expressed will of a majority of the members present at regular meetings. In 1891 two or more of the members of the association volunta-

rily withdrew from the association, and absolutely severed their relation to it without reservation or protest, and from this source another society was formed with substantially the same purposes as the parent society. Members of a religious society may voluntarily withdraw from it and enter another more consonant with their views, but, when they do so, they must be considered as abandoning to the adherents of the original constitution their rights to the property of the society which they leave: 20 Am. & Eng. Ency. of Law, 791. At the time of this trouble there was in the treasury of the association about two hundred dollars, which, it is claimed by appellants, was accumulated by the association for the use of the Salem's Evangelical Church of Allentown, and that it could not be diverted from the trust for which it was raised.

The bill was filed by appellants in behalf of themselves and in behalf of such other persons as may desire to become parties to the bill, but it does not appear that the church, as such, has taken any interest in the controversry. The prayers were for an account of all the money, and for its increase at the time of the separation of some of the members from the association, and for the payment and delivery of all of the money and other property to the plaintiffs belonging to the society at the time mentioned.

The name, object, and membership indicates that it was a useful adjunct of the church, but it was not subordinated to the supervision or control of any external power, and this case is to be decided independent of the controversy in the Evangelical Association of North America, as that body had no right of ecclesiastical control or direction over the affairs of this association. The Salem's Aid Society of the Evangelical Church of Allentown, Pa., was an unincorporated religious association, and an independent society with absolute power over its property.

The amendment of the constitution and the disposition of property were in accord with the law of the association as it was made by the membership.

Assuming that the interpretation put upon article 4 of the constitution, in declaring the object of the society to be " to raise money for said church " and that "said church " was the Christian organization to which all or practically all of these ladies

belonged, should be as contended for by appellants, we are confronted with the express reservation in the constitution that the money of the association should be disposed of as the society might agree upon; and the plaintiffs cannot now object to the action of the members who remained in the parent society. Under its constitution, the will of the majority, fairly expressed on any subject within range of their authority, must govern: Ungangst v. Shortz, 5 Wharton, 506. Common consent and the necessities of the case have given to the majority certain powers which are a part of every such contract of membership. It was provided in the Constitution of 1776 that Societies for the advancement of learning or religion, or for other charitable and pious purposes shall be encouraged and protected in the enjoyment of their privileges and estates, but it would be certain destruction to these meritorious associations to write into the constitution provisions never contemplated at their organization, which we should in effect be doing if we should sustain the claim of the plaintiffs in this bill.

Even had the seceding members remained in the original association, and had a motion to accomplish the purpose of which they now complain been properly adopted, they, though opposing it, would be barred by it: MacDowell v. Ackley, 93 Pa. 277. As between the members, the articles of association are the fundamental rules by which the character of the association is to be determined: Waugh v. Carver, 1 Smith's Leading Cases, 1316, (8 Am. ed.).

The facts as found by the learned judge below are fully sustained by the evidence.

The decree of the court below is affirmed.