# Cases

---

MARTHA A. EVANS, as Administratrix, etc., of ELIZA J. EVANS, Deceased, Respondent, *v.* SOUTHERN TIER MASONIC RELIEF ASSOCIATION, Appellant.

*Assessment insurance companies — right of, to change the rate of assessment — what constitutes the contract of insurance — acquiescence by directors in a new by-law — delegation to directors of the power to determine when by-laws shall take effect — beneficiary concluded by the failure of the member to dissent — unfair discrimination against certain certificate holders.*

It is essential to the existence of assessment insurance associations that, with varying circumstances and with greater demands for death losses, they should be permitted to change the rate of assessment as well as the method of paying death claims.

The application for membership, the certificate of membership and the by-laws form the contract by which the member's rights are to be determined.

Where an assessment insurance association adopts by-laws, changing the method of levying assessments and the method of paying death claims, and provides that such by-laws shall take effect at such time as the board of directors shall deem expedient, the passage of a formal resolution of adoption by the directors is unnecessary. It is sufficient that the amended by-laws were, in fact, actually accepted and adopted in practice by the board of directors directly after their passage, and that thereafter all assessments were made and all death losses paid in accordance therewith.

The power given to the board of directors to determine when the amended by-laws shall take effect does not constitute a delegation by the association to the board of directors of the association of the power to make and amend the by-laws.

Where a person, who was a member of the association at the time the amended by-laws were adopted, continues, without dissent, for over three years, and until his death, to pay assessments levied pursuant to the amended by-laws, he

will be presumed to have assented to the modification of his contract which the amended by-laws purported to make, and an objection on the part of his beneficiary to such modification of the contract will not be entertained.

On October 1, 1892, when the Insurance Law took effect, the by-laws of an assessment insurance association provided that the net avails of the moneys received for dues and assessments during each period of two months should be divided, at the expiration of that period, *pro rata*, after deducting the necessary expenses of the association, among the beneficiaries of the members who had died during that period, "which sum so divided shall constitute the entire amount due upon any certificate thus terminated by the death of such member." Section 210 of the Insurance Law provided that the association should pay the full amount of all certificates thereafter issued, and, in order to comply with this statutory requirement, the association amended its by-laws so as to provide that the association should pay the maximum amount of the certificates issued after September 30, 1892, but that the amounts payable upon certificates in force September 30, 1892, should be determined in the same manner as was specified in the previously existing by-laws.

*Held*, that the amended by-laws were not void, on the ground that they unfairly discriminated against holders of certificates issued prior to September 30, 1892, as long as the additional payments made upon the certificates issued after September 30, 1892, did not come from any fund to which the holders of older certificates were entitled.

PARKER, P. J., dissented.

APPEAL by the defendant, the Southern Tier Masonic Relief Association, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Chemung on the 17th day of February, 1902, upon the decision of the court rendered after a trial at the Chemung Special Term.

The defendant was organized under chapter 319 of the Laws of 1848 as an insurance corporation, doing business on the co-operative or assessment plan. Upon the 13th day of July, 1885, John J. Evans became a member thereof, receiving a certificate, the material parts of which are as follows :

"Amount $1000.

" This is to certify that Brother John J. Evans, of Bethel, Conn., is a member of the Southern Tier Masonic Relief Association of the State of New York, and is entitled to all its rights, privileges and benefits, and subject to the laws, rules and regulations governing said association. In favor of Eliza J. Evans (wife)."

Upon the 16th day of November, 1895, John J. Evans died. He had paid all dues and assessments. In the application of Evans

for membership in the defendant he agreed as follows: " I agree to make punctual payment of all dues and assessments, for which I may become liable, and to conform in all respects to the by-laws, rules and regulations of the above-named association now in force or which may hereafter be adopted by the same or its board of directors." At the time that he became a member of the association there were three classes of members, class first, class second and class A. Under the by-laws, as they then existed, upon his death he became entitled to the payment of his certificate in full, provided one assessment upon the members of class A would bring the amount of that certificate. If not, he was entitled to such part of the certificate as one assessment would produce. Under these by-laws it was provided that an assessment should be made for the payment of each certificate. In January, 1886, the by-laws were amended so that all three classes were joined under the regulations as to class A, except that the assessment upon individual members was changed so as to vary with the age of the member. Upon the 11th of January, 1892, the members of the association assumed to pass by-laws which provided for a mode of assessment in accordance with the table of rates varying with the age of the member, and provided that an assessment upon such table should be issued to the members once a month. By section 35 of these by-laws it was provided that, at the expiration of each two months, all moneys received from members for dues and assessments during that time, after deducting the necessary running expenses of the association, should be divided *pro rata* per $1,000 of insurance held among the beneficiaries of those who had died during that time, " which sum so divided shall constitute the entire amount due upon any certificate thus terminated by the death of such member." It was further provided that the board of directors might order the payment of one or more death claims from the surplus fund, whenever, in their judgment, the fund would warrant. These by-laws were adopted to take effect " at such time as the local board of directors shall deem it expedient to do so." On October 1, 1892, the Insurance Law took effect. (Laws of 1892, chap. 690, § 333, as renumbered by Laws of 1898, chap. 85.) By section 210 thereof, it was provided that the certificates of this association thereafter issued should specify the sum of money to be paid and that this association should pay the full amount of such subsequently issued

certificates. Upon November 29, 1892, by-laws were adopted which provided that this section of the statute should be complied with, and policies thereafter issued should be paid in full. By section 4 of article 2 of those amended by-laws it was provided : " No rates, terms or conditions shall be changed upon the policies as in force on the first day of November, 1892, but they shall remain subject to the by-laws of this association as existing prior to the adoption of these presents." Upon March 20, 1893, the by-laws were again amended, and section 1 of article 11 of such amended by-laws provided that " upon the death of any member of this association the sum to be paid to his representatives, as designated upon the books of this association, shall be the maximum amount as designated in his certificate of membership, provided, however, that ' no rates, terms or conditions shall be changed upon the policies as in force on the 30th day of September, 1892, but (they) shall remain subject to the following by-laws of this association as existing at that time,' and shall be regarded as a contract upon sufficient consideration between the members therein mentioned and the association, to wit." Thereupon follows the same rule governing the payment of death claims as was provided in the by-laws of January 11, 1892, to wit, that each two months the moneys received for dues and assessments during that time, after deducting the expenses, should be divided *pro rata* among the beneficiaries of those who have died during that period, " which sum so divided shall constitute the entire amount due upon any certificate thus terminated by the death of such member." It will thus be seen that the by-laws of March, 1893, are not materially different from the by-laws of November, 1892, at least so far as they may concern any question in this case. In conformity with the by-laws of March, 1893, the defendant made one assessment in November and one in December, 1895. After paying the expenses for those two months, and apportioning the balance among the beneficiaries of those who had died within the two months, it was found that Eliza Evans would be entitled to the sum of $340. This was tendered to her by the defendant, which was refused, and this action was brought by Eliza J. Evans, the beneficiary in the certificate. After recovery below she died, whereupon Martha Evans, as her administratrix, was substituted as plaintiff herein. After a trial of the action before the

court without a jury, the court directed judgment in the plaintiff's favor for the full amount of her certificate, with interest and costs, and from this judgment this appeal is taken.

*Frederick Collin,* for the appellant.

*E. J. Baldwin,* for the respondent.

SMITH, J. :

The learned judge below has held that the by-laws passed in November, 1892, and those in March, 1893, were ineffective and void because they discriminated in providing for the payment in full of the certificates of those members who became such after September, 1892.   He then finds that the by-laws of January, 1892, have been repealed.   Upon this finding he has directed judgment for the full amount of the certificate.   If the by-laws of January and November, 1892, and of March, 1893, are thus disposed of, the plaintiff's right would seem to rest upon the by-laws of 1886.   There seems to be no proof in the case as to what would have been received under one assessment under the by-laws of 1884 and 1886, and without that proof I am unable to understand upon just what basis the judgment can rest.   The assessment made in 1895 was made at the rate prescribed in the by-laws of 1893.   That rate was prescribed upon the basis of one assessment per month, and was naturally much larger than an assessment would be if, under the by-laws, an assessment was to be made upon the death of each member.   The fact, therefore, that the sum of $4,000 was received upon the November assessment in 1895, is not, in my judgment, sufficient to show that an assessment under the by-laws of 1886 would have produced a sum sufficient to pay the plaintiff's certificate.

The right of the defendant to make by-laws and to alter them seems to be within the law.   These mutual insurance companies are not organized for profit but for mutual protection.   It is essential to their existence that, with varying circumstances and with greater demands for death losses, the rates should change as well as the mode of payment of death claims.   Evans, in his application, agreed to be bound by the by-laws of the association " now in force or which may hereafter be adopted by the same or its board of directors."   This application, together with the certificate of membership and the

by-laws, form the contract by which the plaintiff's rights are to be determined. The by-laws, themselves, had a specific provision as to the power and method of amendment. That Evans' contract was subject to modification by reasonable change in the by-laws seems to be held in *McCabe* v. *Father Matthew T. A. B. Soc.* (24 Hun, 149); also *Poultney* v. *Bachman* (31 id. 49). In *Poultney* v. *Bachman,* Justice LEARNED says: "The only contract between the plaintiff and the lodge is that which is made by the constitution and by-laws signed by him. And relying on these as the contract, he must take them all. He cannot claim the benefit of one and reject another. He cannot single out one by-law and say that this is absolute and that it cannot be amended and repealed, because the power to amend or repeal is contained in another by-law. But constitution and by-laws must be taken as a whole. And the by-law on which he relies does not of itself constitute the whole contract. That by-law was liable to be amended or repealed, and it was amended. The power to amend was as much a part of the contract, into which the lodge entered, as was the by-law under which the plaintiff claims." (See, also, *Stohr* v. *Musical Fund Soc.*, 82 Cal. 557; *St. Patrick Male Beneficial Soc.* v. *McVey*, 92 Penn. St. 510; *Fullenwider* v. *Sup. Council Royal League*, 180 Ill. 621; *Supreme Lodge Knights of Pythias* v. *Knight*, 117 Ind. 489.)

The by-laws of November, 1892, and March, 1893, have been held to be void as discriminating between different classes of certificates. This has been held to be an unreasonable by-law. But this by-law was enacted by statutory requirement. If the by-law had not been passed, the statute itself would have worked out the same discrimination and compelled the payment in full of policies thereafter taken. It can hardly be said to be unreasonable, as it has worked to the direct advantage of this plaintiff. Since the passage of the by-law a large number of members have been admitted, who have contributed their share to make up this fund, to a part of which this plaintiff is entitled, while among the beneficiaries to be paid there is one under a certificate taken since September 30, 1892. From the assessment he gets the exact proportion as does the plaintiff. He is required to be paid in full, and he is paid in full from a surplus fund held by the corporation. To this fund this plaintiff had no right whatever for the payment of her certificate. As long

then as the additional payments, upon the certificates issued after September 30, 1892, do not come from any fund to which the holders of the older certificates are entitled, so that the rights of the holders of the older certificates, as they then existed, are in no way diminished, there seems to be lacking that discrimination which would vitiate the amended by-law, even if a discrimination made by the statute itself would otherwise have that effect. It is perhaps unnecessary, however, to go to this extent in the present case. The learned judge has held that the by-laws of January 11, 1892, have been repealed by the by-laws of November 29, 1892, and that those by-laws, as well as the by-laws of March 10, 1893, were void. If those by-laws be held void, they would not operate to repeal the by-laws of January 11, 1892; but, whether void or valid, it seems clear that, as to the policies existing before September 30, 1892, the by-laws of January 11, 1892, are retained as the measure of the rights of the holders thereof. This is so by the explicit declaration both of the by-laws of November, 1892, and of March, 1893. But the by-laws of January, 1892, in no way discriminate between different classes of policyholders. Those by-laws were passed before the law in that year was changed to compel payment in full to certificate holders for certificates thereafter issued. If the by-laws of January, 1892, were valid and binding, and regulated the payment of this certificate, then the defendant's offer to the plaintiff of $340 was in full of all her rights therein. This same result is also reached under the by-laws of November, 1892, and March, 1893.

But the by-laws of January, 1892, are challenged as ineffective for two reasons. Those by-laws provided that they were to become effective when the board of directors deemed it expedient to put them in force. There appears to have been no formal resolution of adoption passed by the board of directors. For this, as one reason, plaintiff claims that they never became effective. But directly after their passage they were in fact accepted and adopted by the board of directors. These by-laws changed the method of assessment and the entire method of payment of death claims. From the time of their passage all assessments were made thereunder, and all death losses paid in accordance with the rule therein specified. Under these conditions we think that a formal resolution of adoption by the board of directors was unnecessary. The actual adoption of

the by-laws is evidence of their judgment of its expediency, and satisfies the condition under which they were passed by the association.

A more serious objection, however, is raised to the validity of these by-laws. They were to become effective whenever the board of directors deemed expedient. The General Corporation Law (Laws of 1892, chap. 687, § 11) authorizes the association, and not its board of directors, to make and amend by-laws. The plaintiff contends that, by leaving it to the directors to say when the by-laws shall be adopted, it has delegated to the directors the making of the by-law and that such by-laws are, therefore, void. It is true that whether the by-law shall become effective depends upon the judgment of the board of directors, and to this extent they are allowed to say whether the association shall proceed under the old by-laws or under the amended by-laws.

The appellant's answer to this objection is that, where an association is authorized to make by-laws, it may delegate the power to some select body. To this proposition some cases are cited holding this as a general proposition, but as applied to this case the answer is not quite satisfactory. These by-laws are not ordinary by-laws governing the method of procedure only. They are by-laws which affect and alter the very contract itself. I should hesitate, therefore, to hold that the statutory power, given to the association to make by-laws affecting and altering the contract of insurance, might be delegated to any select body, even though it be the board of directors of the corporation. A better answer to the objection seems to me to be that the power to make or amend a by-law has not in this case been delegated to the directors. The time when it shall take effect only is given to the directors to determine, and this they are to determine when the affairs of the association are such as to render it expedient in their judgment that the by-law should take effect. In *Cincinnati, W. & Z. R. R. Co.* v. *Commissioners of Clinton County* (1 Ohio St. 77), it was held that an act of the General Assembly, authorizing the commissioners of said county to subscribe to the capital stock of the relator, did not delegate legislative power in providing that the subscription should not be made until the assent of a majority of the electors of the county was first obtained at an election held for that purpose. The objection was there made that;

by the act, the Legislature had sought to delegate its legislative power in the discretion given to the electors of the county to say whether the subscription should be made. At page 88, the opinion in part reads: "But because such discretion is given are these and all similar enactments to be deemed imperfect and nugatory? It would take a bold man to affirm it. In what does this discretion consist? Certainly not in fixing the terms and conditions upon which the act may be performed, or the obligations thereupon attaching. They are all irrevocably prescribed by the Legislature, and whenever called into operation conclusively govern every step taken. The law is, therefore, perfect, final and decisive in all its parts, and the discretion given only relates to its execution. It may be employed or not employed — if employed it rules throughout; if not employed it still remains the law, ready to be applied whenever the preliminary condition is performed. The true distinction, therefore, is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made." (See, also, *Field* v. *Clark*, 143 U. S. 649, 693, 694.) In all our State Constitutions the legislative power is vested in the Legislatures. If legislation, then, may be within the Constitution, and be conditioned upon the approval of any body outside of the Legislature itself, analogy would authorize the passing by this association of this by-law, subject as to the time of its execution to the judgment and discretion of the directors.

But appellant has another ground upon which, I think, it may securely stand in this controversy. These amended by-laws were passed and put into operation in 1892. It does not appear in the case whether Evans was present and consented to their original adoption. In his application for membership he has consented to be bound by the by-laws which might thereafter be adopted by the association "or its board of directors." He is presumed conclusively to have knowledge of the by-laws of the association. (1 Bacon Ben. Soc. & L. Ins. [2d ed.] § 81.) Aside from this presumption, the change in the method of assessment was notice to him of the change in the by-law. Under this changed method of assessment he pro-

ceeded from January, 1892, for over three years without dissent. Under these facts he must be deemed to have assented to the modification of his contract which the amended by-laws purported to make, and having assented, the objection of his beneficiary to that modification comes now too late. (*Koeth* v. *Knights Templars*, 37 App. Div. 146; *MacDowell* v. *Ackley*, 93 Penn. St. 277; *Borgards* v. *F. M. Ins. Co.*, 79 Mich. 440.) In the case of *Parmelee* v. *Southern Tier Masonic Relief Association* (not reported), one Stephen Parmelee received a certificate upon the 7th day of April, 1884, and died upon the 3d day of October, 1900. It was held by Justice CHILDS, presiding in the eighth district, that the rights of the beneficiary under the certificate were to be determined by the by-laws in effect upon the 3d day of October, 1900, which were the by-laws passed in March, 1893.

For the reasons stated and within the authorities cited, we are unable to agree with the learned trial judge in the conclusion reached.

All concurred, except PARKER, P. J., dissenting.

Judgment reversed on law and facts, and new trial granted, with costs to appellant to abide event.