### SUPREME COUNCIL A. L. H. v. LIPPINCOTT.

(Circuit Court of Appeals, Third Circuit. February 13, 1905.)

#### No. 17.

INSURANCE—CONTRACT—BREACH—RESCISSION—ELECTION.

An insurance society, having issued to plaintiff a certificate for $5,000, passed a by-law reducing insurance certificates of $5,000 to $2,000, and thereafter refused to consider plaintiff's certificate in force for more than that sum. Plaintiff protested against such attempted reduction, offered to pay assessments on the full face of his certificate, and thereafter paid assessments based on the reduced amount under protest for a period of two years and five months, when he notified defendant of his intention to cancel the insurance, and demanded repayment of assessments paid. *Held* that, though plaintiff was entitled to such relief on defendant's breach of its contract in the first instance, he, having elected to treat the contract as continuing, notwithstanding defendant's breach, by pay-

ment of assessments during such time, was not entitled to make a second election to rescind.

[Ed. Note.—For cases in point, see vol. 28, Cent. Dig. Insurance, §§ 457–464, 1888.

Mutual benefit insurance contracts as affected by subsequent provisions and amendments of charter, constitution or by-laws, see note to Supreme Council A. L. H. v. Champe, 63 C. C. A. 285.]

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 130 Fed. 483.

F. P. Prichard, for plaintiff in error.

J. H. Brinton, for defendant in error.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

ACHESON, Circuit Judge. It was decided by this court in Supreme Council American Legion of Honor v. Black, 123 Fed. 650, 59 C. C. A. 414, that by reason of the adoption by the corporation of the by-law reducing the insurance certificate from $5,000 to $2,000 and putting the by-law into effect by making assessments on the reduced basis and notifying the certificate holders, a certificate holder who had performed his part of the contract, and had not consented to the reduction, might elect to treat the contract as rescinded, and sue immediately to recover back all the assessments he had paid under his certificate. We applied to the case the principle enunciated in Hochster v. De La Tour, 2 El. & Bl. 678, Johnstone v. Milling, L. R. 16 Q. B. Div. 460, and Roehm v. Horst, 178 U. S. 1, 13, 20 Sup. Ct. 780, 44 L. Ed. 953, that when one party to a contract to be performed at a future time announces his intention not to perform it, the other party, if he chooses, may elect to act upon such announcement as a wrongful renunciation of the contract, and may thereupon treat the same as a breach of the contract, and bring suit at once for such breach. Black had given immediate notice that he regarded the by-law as a breach of the contract, and he promptly brought his action. In the subsequent case of Supreme Council American Legion of Honor v. Daix (C. C. A.) 130 Fed. 101, we held that the certificate holder there suing had not lost his right to treat the contract as rescinded, and recover back the assessments he had paid, simply because of a delay of two years and three months in giving notice of his election to do so, he having done nothing in affirmance of the by-law or indicating a waiver of his right to treat the contract as rescinded, and having done no act tending to mislead the corporation, and it not appearing that the corporation had suffered any injury from the delay of the plaintiff in signifying his election to rescind. The present case differs from the two former ones (the cases of Black and Daix) in this: that immediately upon the adoption and putting into effect of the by-law the plaintiff (Lippincott) made his election not to treat the contract under his $5,000 certificate as at an end, or broken, but to keep the contract in full force, and to maintain unimpaired all his rights thereunder; and to that position he steadfastly adhered for a period of two years and five months. The court below, in its opinion, says: "The unquestioned facts show plainly that the plaintiff, by his words and conduct, declared his intention not to assent to the reduc-

tion of his certificate, but to hold on to the original agreement." To this latter end he protested against the attempted reduction, offered to pay assessments upon the full face of his certificate, and thereafter paid assessments based upon the reduced amount, but always under protest, until February 28, 1903, when he wrote to the local council: "I shall discontinue to pay the dues and assessments on the $5,000 certificate issued to me, and will ask you to return me the amount paid by me on the same up to October 1, 1900, at which time, by the adoption of the resolution, you abrogated your contract with me." Now, undoubtedly the plaintiff had kept his contract alive, so that, if he had died between October 1, 1900, and February 28, 1903, his beneficiary (Mrs. Lippincott) could have recovered the amount of his insurance certificate, $5,000. The protests which accompanied the plaintiff's payments of assessments were intended merely to preserve his contract rights under his $5,000 certificate, and had no other effect.

This action was brought on March 18, 1903, for the recovery of the dues and assessments paid by the plaintiff under his certificate prior to October 1, 1900, the date when the reducing by-law of August, 1900, went into effect. Anticipatory breach of the contract is the ground of recovery relied on. Can the plaintiff recover, in view of his election, made in October, 1900, not to accept the defendant's action as an anticipatory breach, but to treat the contract as continuing in full force, his subsequent retention of membership in the order, and his payments of assessments down to February 28, 1903? This question can best be answered by referring to what was said in Hochster v. De La Tour, Johnstone v. Milling, and Roehm v. Horst, supra, the leading cases on the subject of anticipatory breaches of contracts. We extract from these cases the following principles: Where one party to a contract to be performed in the future, before the time for performance arrives, refuses to perform, or declares his intention not to perform, he thereby, so far as he is concerned, declares his intention then and there to rescind the contract. Such renunciation, however, in and of itself does not work a rescission, for one party to a contract cannot, by himself rescind it. But by making the wrongful renunciation he entitles the other party, if he pleases, to agree to the contract being put an end to, subject to the retention by him of his right to bring an action in respect to such wrongful rescission. L. R. 16 Q. B. Div. 467. A declaration by the promisor, before the time for performance has arrived, of his intention not to perform, is not in itself, and unless acted on by the promisee, a breach of the contract. Such declaration only becomes a wrongful act if the promisee elects to treat it as such. If he does so elect, it becomes a breach of contract, and he can recover upon it as such. Id. 473. In Johnstone v. Milling, L. R. 16 Q. B. Div. 460, 467, Lord Esher, Master of the Rolls, said:

"The other party may adopt such renunciation of the contract by so acting upon it as, in effect, to declare that he, too, treats the contract as at an end, except for the purpose of bringing an action upon it for the damages sustained by him in consequence of such renunciation. He cannot, however, himself proceed with the contract on the footing that it still exists for other purposes, and also treat such renunciation as an immediate breach. If he adopts the renunciation, the contract is at an end, except for the purposes of the action for such wrongful renunciation. If he does not wish to do so, he must wait for the arrival of the time when, in the ordinary course a cause of

action on the contract would arise. He must elect which course he will pursue."

Now, the plaintiff was not bound by the action of the corporation in adopting the by-law of 1900 and putting it into effect. His contract remained unaffected. But he acquired the right of electing either to treat the attempted reduction of his certificate as a breach of the contract and ground for making an end of it with an immediate right of action for the recovery of damages, or else to hold fast to his contract. The plaintiff chose the latter course. He elected to keep the contract alive, and did so. The court below did not doubt that the plaintiff had elected to keep the contract alive. In its opinion the court states the question here to be "the right of a member of the defendant order to rescind his contract after having once elected not to rescind." And the court held that the plaintiff was not precluded, even after the lapse of two years and five months, from making a second election to rescind the contract. To this view we cannot assent. In the circumstances we think it was not open to the plaintiff to make a second election, reversing his former one. Clough v. London and Northwestern Ry. Co., L. R. 7 Exch. 26, 34. Speaking of the right of election to avoid a sale of personalty, the court there said:

"And we further agree that the contract continues valid till the party defrauded has determined his election by avoiding it. And as is stated in Com. Dig. Election, c. 2, if a man once determines his election it shall be determined forever; and as is also stated in Com. Dig. Election, c. 1, the determination of a man's election shall be made by express words or by act. And consequently we agree with what seems to be the opinion of all the judges below that, if it can be shown that the London Pianoforte Company have at any time after knowledge of the fraud either by express words or by unequivocal acts affirmed the contract, their election has been determined forever."

The principle of the finality of an election once made is applicable, we think, to the present case.

We see no ground upon which the plaintiff can avoid the election he made in October, 1900. We cannot agree that it was "a hasty and ill-advised decision." It seems to us to have been intelligently and deliberately made upon full knowledge of all the facts. Moreover, the plaintiff rested content with his election for two years and five months. His election to keep the contract alive is not now open to reconsideration. Nor can we give our assent to the proposition urged by the defendant in error that the breach of contract was a continuing one, and therefore that the plaintiff could rescind the contract at any time up to the time set for performance. All the grounds warranting rescission existed and were complete at the time the plaintiff made his original election. The right of the plaintiff to abrogate the contract was gone forever when he elected not to rescind. His exercise of the right of election fixed the contractual relations of the parties. Those relations were not thereafter subject to change at the mere pleasure of the plaintiff.

The views we have above expressed require us to render the judgment following: The judgment of the Circuit Court is reversed, and the cause is remanded to that court, with direction to enter judgment in favor of the defendant non obstante veredicto.