### CLYMER v. SUPREME COUNCIL, A. L. H., et al.

(Circuit Court, E. D. Pennsylvania. May 31, 1905.)

#### No. 7.

MUTUAL BENEFIT INSURANCE—RESCISSION OF CONTRACT—LACHES.

Where a member of a mutual benefit association was entitled to rescind his contract and recover the assessments paid because of the illegal attempt of the society to reduce the amount payable thereon, but, while protesting, paid the assessments made against him on the new basis for three years before electing to rescind, during which time the society lost a large number of members by death and withdrawal, who would have been assessable to pay his claim, and also took in new members in ignorance of such claim, the delay constituted such laches as to estop him from recovering back the assessments paid.

At Law. On motion by defendant for judgment notwithstanding the verdict.

B. Elwert, for plaintiff.

Kendrick & Atkin, for defendants.

J. B. McPHERSON, District Judge. There were no facts in dispute at the trial, and a verdict was accordingly directed in favor of the plaintiff, the court reserving the question whether any evidence had been offered that should carry the case to the jury. It was shown that the plaintiff held a certificate for $5,000 in the American Legion of Honor, which the supreme council of the order had attempted to reduce to $2,000 by an amended by-law, which was passed in August, 1900, and put into effect in October of that year. The plaintiff was duly notified of the amendment, and when the first assessment under it, which reduced the charge upon his certificate from $11.40 to $4.56, was presented for payment, he pro-

tested to the collector against the action of the supreme council, but finally paid the smaller amount; and thereafter, without further protest, paid assessments of $4.56 until September, 1903, when he ceased payment and brought this suit, declaring in his statement of claim that "plaintiff now elects to rescind said contract, considers it terminated, and declines to pay any further assessment." His testimony upon this point is as follows:

"Q. You knew that they passed such a by-law reducing the face value of the policy?

"A. Yes, I had known that.

"Q. When the collector came around to collect, what did you do, right after this by-law went into effect?

"A. I protested, saying while they had every right to make as large assessment as was necessary to pay for the decree [deaths?], they had no right to reduce my certificate.

"Q. Then you continued to pay as the assessments were levied?

"A. Exactly.

"Q. During that time, between August, 1900, and the time you brought suit, did this organization issue to you any policy with the reduced amount?

"A. That is the only policy.

"Q. Did they in any way stamp your policy showing it was reduced?

"A. Not in any way, outside of the notice they sent around that they intended to do so."

On his direct examination he testified that the notices of assessment after October, 1900, did not indicate on what amount he was being assessed, and that he received no other word from the order that he was being assessed on a $2,000 policy "but the two circulars"—meaning the circular of August or September, 1900, notifying him of the amendment, and a circular of August 29, 1903; the latter being of no importance in this trial. But it appeared afterwards that he had probably misunderstood the questions of his own counsel, for he testified on cross-examination as follows:

"Q. You testified in chief that you had been advised of the by-laws passed in 1900, reducing the amount payable under your policy. Is that so?

"A. Yes, that is right.

"Q. With that knowledge, did you subsequently pay the amounts, between 1900 and 1903?

"A. Whatever was called, yes.

"Q. Did you protest in any other manner than in the manner which you have described to the reduction in your policy?

"A. No.

"Q. What words did you use to the collector at the time you made this protest?

"A. That they had a perfect right to levy whatever assessments were required to pay for the death benefits, and they had no business to reduce my certificate, or the amount of my certificate.

"Q. Between 1900 and 1903, were your assessments lower than they had been under the $5,000 plan?

"A. Yes.

"Q. They were lower?

"A. Yes."

Upon these facts, the case is not distinguishable from Supreme Council, etc., v. Lippincott (C. C. A.) 134 Fed. 824, decided by the Court of Appeals for this circuit, and upon the authority of that decision, therefore, the defendant is entitled to judgment upon the reserved point.

There is another ground equally fatal to the plaintiff's claim. In Supreme Council, etc., v. McAlarney (C. C. A.) 135 Fed. 72, also decided by the Court of Appeals for this circuit, the sufficiency of an affidavit of defense filed by the council was in question. It averred, inter alia:

"That the revenues of the defendant association are derived from assessments levied against its members, whenever its obligations require; that its officers did not know of the plaintiff's claim, and therefore did not provide for the same in calling assessments during the period between the time the right of rescission accrued to the plaintiff, in October, 1900, and the bringing of this suit, in May, 1904; that during that time about 3,000 members have either died or dropped out of the association, against whom assessments would have been laid proportionately, and collected, with which to pay the plaintiff's claim; that during said time 125 persons joined the association in ignorance of the plaintiff's claim; that the defendant association has been conducting its affairs on the belief that no such claim existed as the plaintiff now makes; and that the defendant has suffered damage in the respects mentioned, through the delay of the plaintiff in rescinding his contract."

These averments were held by the Court of Appeals to be sufficient to prevent a summary judgment, the court saying:

"It seems to us that the affidavit of defense fairly and sufficiently raised the defense that the delay of the plaintiff in signifying his election to rescind was both unreasonable and hurtful to the defendant, and therefore that the plaintiff had lost his right to treat the contract as rescinded and recover back the assessments he had paid."

What was only averred in McAlarney's Case was established on the present trial, for it was admitted by the plaintiff's counsel "that at least 100 members were admitted between October, 1900, and October, 1903, to the defendant organization, without knowledge of the plaintiff's claim set up in this suit."

Moreover, the case now under consideration goes further than McAlarney's, for the additional admission was made "that fifty members died during that period, and recovery from their estates for amounts based upon the plaintiff's certificate of $5,000 cannot now be obtained."

These facts, which happened during the delay of the plaintiff in giving notice of his election to rescind, must be held (to use the language of the Court of Appeals) to have been "both unreasonable and hurtful to the defendant," the result being "that the plaintiff had lost his right to treat the contract as rescinded and recover back the assessments he had paid."

On either ground, therefore, or on both grounds, the defendant is entitled to judgment notwithstanding the verdict.