# CASES DETERMINED

# January Term, 1909.

Voss, Respondent, vs. Northwestern National Life In-
surance Company, Appellant.

*October 2, 1908—January 26, 1909.*

*Estoppel: Breach and affirmance of contracts: Mutual insurance con-
tracts: Rescission: Waiver.*

1. Where an assured, under a policy of life insurance alleged to
   have been breached by the passage of a by-law of the mutual
   company which issued the policy, continues for four years to
   make payments without objection, he cannot claim the benefits
   of the alleged breach.
2. Election to take advantage of a breach of a contract must be
   promptly made.
3. Such rule is peculiarly applicable to mutual insurance contracts,
   where the insured practically is on both sides of the contract,
   as insurer and insured.
4. A by-law passed by a mutual life insurance company provided
   that a certain class of policies, theretofore issued, was re-
   rated and required to pay a larger premium than specified in
   the policies. The by-law further required that such increased
   premium should be paid after a certain date; that the insured
   might elect to make payments according to the terms of the
   policy, in which case his policy would be proportionately com-
   muted and his insurance proportionately decreased; and that
   any policy on which payments were not made as required
   should become null and void and all payments forfeited. This
   by-law was passed, obviously in good faith, to maintain the
   solvency of the company. The insured, and plaintiff the bene-
   ficiary, had notice of such purpose and knew the company

was run on the idea that the by-law was valid. *Held*, that it was their duty, in justice to other members, to seasonably elect whether they would treat the passage of such by-law as a breach of their contract of insurance or not.

5. In such case the question is not one of estoppel, but waiver.

6. A waiver is the voluntary relinquishment of a known right, benefit, or advantage.

7. Voluntary choice is the essence of waiver, and the doctrine of waiver is not necessarily predicated upon estoppel.

8. Where a mutual life insurance company, by the passage of a by-law providing for an increased premium, works a repudiation of its contract with an insured which justifies rescission, the insured cannot continue for four years to stand upon the policy, claiming the benefits of it without paying the increased premium, the company carrying the risk for the full value of the policy, while if rescission had been promptly made the appellant would only be liable for the damages caused by the breach. The insured cannot thus stand on repudiation or no repudiation as best serves his purpose.

9. Where an insured received and for four years retained papers informing him of the corporate action of a mutual life insurance company in which he held a policy, and also informing him of the effect of such action on his policy, he cannot be permitted to say that he did not know the contents of such papers.

10. Where a mutual life insurance company passed a by-law increasing the rates of premiums on existing policies (whether the passage and attempted enforcement thereof was a breach of its contracts of insurance being a point not decided), in an action for damages predicated on such breach it is *held* upon the whole record that both the insured and the beneficiary had waived the right to maintain the action.

BARNES, J., dissents.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Reversed.*

Prior to 1900 Ferdinand Voss, husband of plaintiff, was insured in the Northwestern Mutual Relief Association of Madison, Wisconsin, under a certificate bearing date February 7, 1884, in the sum of $2,000, upon the mutual assessment plan, which policy was carried by him until October 29, 1900. Upon the date last mentioned said Ferdinand Voss

exchanged his life insurance certificate issued in 1884 for a new policy of insurance in the sum of $2,000 in the Northwestern National Life Insurance Company, of the city of Madison, Wisconsin, bearing the same date as the old certificate, February 7, 1884. This latter policy was issued subject to ch. 270, Laws of 1899, and provided for the payment of a bimonthly premium during the continuance of the policy. The policy, known as No. H 2491, and in which the plaintiff was named as beneficiary, was issued in consideration of the bimonthly premium and the agreements and warranties in the application and the conditions and provisions indorsed thereon, all of which by the terms of the policy were made part of the contract. The conditions on the back of the policy provided, among other things, that it was issued subject to secs. 5, 6, 8, and 9, ch. 270, Laws of 1899, and contained the further provision:

"This policy carries the yearly term reserve at the attained age of the insured according to the combined experience table of mortality and interest at four per cent.; and any lien against or charge upon this policy or any indebtedness of the insured in the company or any unpaid premiums of the current year will be deducted in the settlement of the death benefit under this policy."

The application acknowledged the existence of a lien against the policy in the sum of $167.32.

On August 29, 1901, the defendant was organized to do business on the mutual insurance plan as authorized by ch. 178, Laws of 1901 of the state of Minnesota, and by its articles of incorporation its board of directors was authorized to "make and amend such by-laws as they deemed necessary and adopt rules for its own government." By the terms of these by-laws the defendant had power to "adjust or readjust rates of assessments or premiums of insured members paying a net rate of less than the rate indicated by the table of rates for a policy of the same kind or class based upon the American Experience Table of Mortality and four per cent. interest, at any age or time, so that each member shall be re-

quired to pay, and shall pay, his equitable share of death claims, expenses, and other liabilities;" and further, "to fix the amount and rate of premiums upon contracts hereafter issued or heretofore issued or assumed by the company, and especially to make such amendments to the by-laws as may be needed to enable the company to carry out contracts heretofore issued or assumed by it." The by-laws further provided that all policies or certificates issued or assumed by the defendant should be construed and governed only by the laws of the state of Minnesota, and that the defendant might reinsure the members of other companies, associations, or societies, issuing thereto its policies or certificates of insurance, and that policies of insurance may be issued in any form not in conflict with the articles of incorporation or the laws of the state of Minnesota.

On the 29th of August, 1901, an agreement was entered into between the old company, known as the Madison or Wisconsin Company, and the defendant, known as the Minnesota Company, by the terms of which it was agreed that the defendant should reinsure the members of the Wisconsin Company upon the terms and conditions provided in such agreement, the defendant being designated in the agreement first party, and the Madison or Wisconsin Company second party. This agreement contained the following clause:

"Now, therefore, the party of the first part for a good and valuable consideration by it received, and in consideration of the execution hereof by the party of the second part and the fulfilment by the party of the second part of the terms and conditions hereof, and upon the terms and conditions herein provided, and not otherwise, doth hereby agree to receive and doth hereby receive into its membership as of this date all of the living members, policy-holders and certificate-holders, of the party of the second part, who upon this day are and by the books of the party of the second part appear to be members thereof in good standing, and such members as may not at present be in good standing, but are entitled to reinstatement and who may hereafter be duly reinstated, and doth hereby assume each and every of the present certificates and

policies of the party of the second part issued by it, under its present or former name, to and held by such members, subject, however, in each case to the terms and conditions of the particular contract of each member and upon the terms, conditions, stipulations, and agreements herein contained, and not otherwise. . . . And the assuming of each policy or certificate by the party of the first part is expressly subject to the provisions of the articles of incorporation and by-laws of the party of the first part, as the same now exist or as they may hereafter be amended, and also subject to the laws of the state of Minnesota as they now exist or may hereafter be or exist, all whereof constitute and form a part of each certificate and policy hereby assumed."

On September 3, 1901, the defendant sent to the insured the following insurance policy:

"This is to certify that the *Northwestern National Life Insurance Company,* of Minneapolis, Minnesota, did upon the 29th day of August, 1901, by a contract of consolidation or reinsurance receive into its membership as members and did reinsure all living members of the Northwestern Life Insurance Company, of Madison, Wisconsin, who upon said date appeared upon the books of said last-named company to be and who actually were members in good standing thereof, and whereof, including policy H 2491 on the life of Ferdinand Voss, Black Earth, Wisconsin, subject to their several policies or certificates issued by said company at Madison, Wisconsin, and to the terms and conditions of said contract of reinsurance; it being expressly stipulated that all of said contracts are to be construed as contracts of the state of Minnesota and in accordance with the laws of said state, and are assumed subject to the by-laws and articles of incorporation of the reinsuring company as they now are or may hereafter exist, and to the laws of the state of Minnesota, and especially to ch. 178 of the Laws of 1901.

"WILLIAM F. BECHTEL, President.
"FRED J. SACKETT, Secretary.
"Dated September 3, 1901."

At the time of reinsurance with the defendant the insured was paying bimonthly on his "H" policy with the Wisconsin

Company $6.10, which payment was continued up to June
6, 1907.   On November 13, 1902, the defendant passed a by-
law by the terms of which it was provided, in substance, that
each policy issued by the Northwestern National Life In-
surance Company, of Madison, Wisconsin, and designated by
said company as an "H" policy, which provided for annual
renewable term insurance, requiring payment of an annual,
semi-annual, quarterly, or bimonthly premium of a less
amount than required by the combined experience table of
mortality with four per cent. interest for annual renewable
term insurance, was rerated and required to pay a larger
premium than specified in the policy, and provided specific-
ally the amounts which should be paid on January 1, 1903,
and each year thereafter.   The by-law further provided that
the insured would be allowed to make payments according to
the terms of his policy, but that in such case his policy would
be proportionately commuted and his insurance proportion-
ately decreased, and that any policy upon which premium
payments were not made as required thereby should become
null and void and all payments made thereon forfeited to the
defendant; that the adoption of the by-law was for the pur-
pose of perfecting an equitable adjustment of premium pay-
ments among the policy-holders and to enable the company
to preserve and maintain its standard of solvency and to fully
meet its reserve and liability under the law.   A table of
rates made applicable to each policy was set out in the by-law,
and provision made therein for the giving of notice to each
policy-holder affected by the by-law.   Immediately after the
passage of this by-law a printed copy of the same was mailed
to the insured and all others of his class, and the insured,
Ferdinand Voss, made no objection to it until May, 1907.
In January and February, 1903, printed circulars were sent
to the insured, giving an explanation of the effect of the by-
law and calling attention to the laws of Wisconsin and Min-
nesota respecting the matter and the duty of the defendant to

maintain its reserve and the necessity of passing the by-law in order to do the same, and further explaining that the insured had the privilege of paying the rate specified in his policy and having the same scaled down, or the larger rate specified in the notice and by-law. Full explanation was made as to the effect of each payment. The insured received this notice and made no objection, and continued to pay the premium specified in his "H" policy with the Wisconsin Company up to June, 1907. On May 1, 1907, the insured and plaintiff wrote the defendant that their first definite information that the policy was subject to reduction of value was received in a letter written by the company April 2, 1907, in reply to one written on behalf of the insured. They then objected to the by-law, denied its validity, and claimed the contract was rescinded by the passage and attempt to enforce the by-law. Evidence was offered by plaintiff tending to show that the increased rate fixed by the by-law was unreasonable and for that reason the by-law was void. There was also evidence tending to show that the rate fixed by the by-law was not unreasonable or higher than necessary to maintain the solvency of the company. The evidence also shows that the insured had charge of payment of the premiums and attended to all the matters connected with the insurance for the plaintiff and acted as her agent in that regard; that about four fifths of the holders of "H" policies, similar to the one held by the insured, complied with the by-law in question without objection.

This action was brought to recover damages for the alleged breach of the contract of insurance assumed by defendant, alleged to have occurred by the passage of the by-law on November 13, 1902, and the notice of January and February, 1903. The plaintiff alleged in the complaint that she and the insured declared the policy of insurance rescinded and demanded damages, alleged to be $1,082.01. The defendant denied the material allegations of the complaint re-

specting the alleged breach, and set up that the by-law was regularly and lawfully passed and valid; that the insured and all other policy-holders affected by said by-law had ratified it; that the business of the defendant had been run on the faith of such ratification; that the insured and plaintiff were estopped from objecting to the by-law; and that the insured and plaintiff had failed to pay the premium of June 6, 1907. The court below found that the passage of the by-law in effect rerated the "H" policy issued by the Madison Company to the insured and required a much larger rate than that fixed by the policy; that the premium under such by-law increased from year to year, and that payment at the rate fixed in the policy might be made and the policy proportionately commuted; that after January 1, 1903, the defendant sent to Ferdinand Voss, as each bimonthly payment became due, notice of the amount due under the terms of the by-law; that said Voss continued to pay the premium named in the policy up to and including the payment falling due April 10, 1907; that during April, 1907, Voss was informed by the company that his policy was being commuted under the by-law; that on May 7, 1907, plaintiff and the insured notified defendant that they considered the commuting of the policy a breach, and that they rescinded and demanded the value of the policy as damages. As conclusion of law the court found that plaintiff was entitled to recover $1,110.63 and costs. Judgment was entered accordingly, from which this appeal was taken.

For the appellant there were briefs by *Jones & Schubring,* attorneys, and *John T. Baxter,* of counsel, and oral argument by *B. W. Jones.*

*Frank E. Parkinson,* for the respondent.

The following opinion was filed November 10, 1908:

KERWIN, J. Several contentions are made by appellant as grounds for reversal, and among others that the court

erred in failing to find, as requested by defendant, that Ferdinand Voss was the agent of plaintiff in the insurance matters and that he and plaintiff accepted, adopted, and ratified the by-law of November 13, 1902, and elected to pay the premium provided by the policy and have it commuted accordingly. If the foregoing contentions are sustained no others need be considered. There can be no doubt upon the evidence that the insured acted as the agent of the plaintiff in all matters regarding the policy, and further it appears that plaintiff had knowledge of the material facts. The evidence shows that the insured had entire charge of the matters for his wife and that she left everything to her husband, the insured. Conceding, as contended by respondent, that the passage of the by-law constituted a breach or repudiation of the insurance contract assumed by appellant, we approach the question whether the respondent waived the breach, kept the contract alive, and consented to abide by the by-law. The respondent, by bringing suit upon the breach, seeks to avail herself of the benefits of it after standing upon the contract for a period of four years. Counsel contends that in making the payments respondent was standing upon the contract; but that position is not consistent with the present suit, based upon the breach committed four years before. Under the circumstances of the case disclosed by the record the insured knew that the premiums were received under the by-law, which provided for the payment of the lesser premium referred to in the by-law and reduction of the insurance named in the policy proportionately. He therefore could not continue to make payments without objection for four years and then claim the benefit of the alleged breach. To permit this would be to suffer the insured to assume the double role for a period of four years of breach and no breach, as might best serve his or the plaintiff's purpose. That a party cannot affirm the contract and take advantage of the breach at the same time is well settled. *Woodman v. Blue*

*Grass L. Co.* 125 Wis. 489, 103 N. W. 236, 104 N. W. 920. If, as claimed by respondent, she was simply performing her contract during the four years she made payments, she cannot now avail herself of the breach occurring four years before, during which time she has kept the contract alive, according to her contention in this court as well as below. *Supreme Council v. Lippincott,* 134 Fed. 824; *Wells v. Hartford M. Co.* 76 Conn. 27, 55 Atl. 599. The election to take advantage of a breach must be promptly made. *Smith v. Georgia L., S. & B. Co.* 113 Ga. 975, 39 S. E. 410; *Kilgore v. Northwest Texas B. E. Asso.* 90 Tex. 139, 37 S. W. 598; *Clymer v. Supreme Council,* 138 Fed. 470; *Woodman v. Blue Grass L. Co.* 125 Wis. 489, 103 N. W. 236, 104 N. W. 920. This rule is peculiarly applicable in mutual insurance contracts, where the insured practically is on both sides of the contract, as insurer and insured. In the instant case about four fifths of the policy-holders complied with the by-law. It was passed, obviously in good faith, to maintain the solvency of the company. In fact, the whole scheme, beginning with the contract of consolidation and ending with the passage of the by-law, appears from the record to have been carried out for that purpose. The insured and respondent had notice of such purpose, knew the company was run on the idea that the by-law was valid, and it was their duty, in justice to other members of the defendant mutual company, to seasonably elect whether they would treat the passage of the by-law a breach or not. *Borgards v. Farmers' Mut. Ins. Co.* 79 Mich. 440, 44 N. W. 856; *Evans v. Southern T. M. R. Asso.* 76 App. Div. 151, 78 N. Y. Supp. 611; *Reynolds v. Supreme Council,* 192 Mass. 150, 78 N. E. 129; *Pain v. Société St. Jean Baptiste,* 172 Mass. 319, 52 N. E. 502; *Smith v. Georgia L., S. & B. Co.* 113 Ga. 975, 39 S. E. 410; *Kilgore v. Northwest Texas B. E. Asso.* 90 Tex. 139, 37 S. W. 600; *Supreme Council v. Lippincott,* 134 Fed. 824; *Foss-Schneider B. Co. v. Bullock,* 59 Fed. 83.

It is insisted by attorney for respondent that the appellant was not prejudiced by the delay in failing to rescind, and he bases his contention upon the doctrine of estoppel. Here the question is not one of estoppel, but waiver. And while there is considerable confusion in the books respecting the use of these terms indiscriminately, there is a wide difference in their meaning in the law as ordinarily applied. A waiver is the voluntary relinquishment of a known right, benefit, or advantage. *Pabst B. Co. v. Milwaukee,* 126 Wis. 110, 105 N. W. 563; *Stewart v. Crosby,* 50 Me. 130; *Cowenhoven v. Ball,* 118 N. Y. 231, 23 N. E. 470. Voluntary choice is the essence of waiver, and the doctrine of waiver is not necessarily predicated upon estoppel. *Dailey v. Kennedy,* 64 Mich. 208, 31 N. W. 125; *Cassimus Bros. v. Scottish U. & N. Ins. Co.* 135 Ala. 256, 33 South. 163; *Pabst B. Co. v. Milwaukee, supra.* But if we were to apply the principles of estoppel to the case in hand we think the respondent could not escape. Assuming, as insisted by respondent, that there was a repudiation in November, 1902, which justified rescission, the insured and the plaintiff continued to stand upon the policy of insurance, claiming the benefits of it without paying the increased premium, while the appellant was carrying the risk for the full value of the policy, while if rescission had been promptly made the appellant would only be liable for the damages caused by the breach. In other words, upon the respondent's theory the plaintiff could, during the four years which elapsed between the date of the alleged repudiation and the commencement of this action, have stood on repudiation or no repudiation as best served her purpose. We cannot assent to such a proposition. *Supreme Council v. Lippincott,* 134 Fed. 824; *Clymer v. Supreme Council,* 138 Fed. 470.

Point is made by respondent that the insured or plaintiff did not have knowledge of the effect of the by-law until 1907. This position upon the record is clearly untenable. It is

not denied but that the insured received a copy of the by-law and the letters referred to in the statement of facts in 1903, and also received notices as premiums became due, stating amounts, receiving one in February, 1903. These papers informed the insured fully of the increase in premiums and the effect of paying the rate mentioned in the policy as well as the larger rate. The insured also received and retained the policy of reinsurance. He cannot be permitted to say that he did not know the contents of these papers. *Bostwick v. Mut. L. Ins. Co.* 116 Wis. 392, 89 N. W. 538, 92 N. W. 246; *Kruse v. Koelzer,* 124 Wis. 536, 102 N. W. 1072. Counsel for respondent cites over 400 authorities, some of which he frankly admits he has not examined. We have spent much time and labor upon them. Those strongest in support of the position of counsel for respondent on the question upon which the case turns are *Williams v. Supreme Council,* 80 App. Div. 402, 80 N. Y. Supp. 713, and *Smith v. Supreme Council,* 94 App. Div. 357, 88 N. Y. Supp. 44. In the first case there was clearly no waiver. The premium was paid under protest, the insured standing upon the policy as originally made. Besides, there was a flat reduction in the amount of the benefit from $5,000, as provided in the policy, to $2,000. In the latter case (*Smith v. Supreme Council, supra*) there was a similar cut, and the action was brought upon the policy after death of the insured. It also appears, as stated in the opinion, that the insured did not have knowledge of the change and hence there could be no acquiescence or ratification, and that, since he had no notice of the change, his contract rights could not be affected by it on the theory of acquiescence, ratification, or estoppel. Moreover, the opinion is in direct conflict with *Evans v. Southern T. M. R. Asso.* 76 App. Div. 151, 78 N. Y. Supp. 611.

We do not decide whether the passage and attempted enforcement of the by-law was a breach of the contract; but, as-

suming that it was, we are convinced upon the whole record that the plaintiff and insured waived the right to maintain an action because of such breach, and therefore the judgment must be reversed.

*By the Court.*—The judgment below is reversed, and the action remanded with instructions to render judgment for defendant dismissing the action.

BARNES, J. (*dissenting*). Under the contract of insurance involved in this case the insured was obliged to make periodical payments of the stipulated premium under penalty of having his contract rights forfeited. The payment of these premiums was entirely consistent with a determination on the part of the insured to stand on the contract obligation and insist that the insurer abide thereby. The insured was entitled to proceed to carry out his part of the contract, and might well ignore the arbitrary and impudent assumption, on the part of the insurer, of the right to relieve itself of two thirds of its contract obligation by going through the formula of passing a by-law to that effect. The obligation of a contract is not so easily disposed of. If it could be, there would be little stability to such obligations. As was well said by the Pennsylvania court in *Becker v. Berlin Ben. Soc.* 144 Pa. St. 232, 22 Atl. 699, the passing of the alleged by-law "was certainly an easy mode of relieving the society of an obligation, and, if successful, will doubtless be followed by other similar associations. The difficulty in the way of this convenient mode of paying debts is that it is repudiation pure and simple." To the same effect are *Covenant Mut. L. Asso. v. Kentner,* 188 Ill. 431, 442, 58 N. E. 966; *Becker v. Farmers' Mut. Ins. Co.* 48 Mich. 610, 12 N. W. 874; and *People v. Empire Mut. L. Ins. Co.* 92 N. Y. 105.

The ability or inability on the part of the insurer to carry out its contracts is immaterial. Whether it would be wise

or unwise for the policy-holders to insist on their rights is beside the question. The courts are not making contracts for parties. If the insurance company could induce the policy-holders to surrender the contracts which they held and accept others in lieu thereof, it was within its province to do so. If it could not, then it should take the route traveled by other insolvents. It could not, without the consent of the insured, assume to substitute an entirely different obligation on its part from that which it was bound under the contract to meet. To say that a party may deprive himself of two thirds of the benefit of his contract without consideration, by carrying out his part of it and by simply disregarding an unwarranted attempt on the part of the insurer to foist another contract on him, is carrying the doctrine of waiver away beyond where I think it should be carried. The insurer has not been misled to its detriment, and had no right to assume, in the absence of express consent by the insured, that any such proposition would be agreed to.

If A. writes B. that the latter owes him $1,000 and B. ignores the letter, in a suit brought to recover such sum, by most courts the fact of writing the letter, and of failure to reply, could not be shown in evidence. In some jurisdictions such facts might be shown as tending to establish an admission; but the evidence at best, if receivable at all, would be very weak. Jones, Ev. § 583 (599); 2 Wigmore, Ev. § 1073. Here, it seeems, the same facts are not only admissible as tending to show assent or ratification, but the evidence is held conclusive. What, at best, is only held to be inconclusive evidence of a weak and unsatisfactory character of an evidentiary fact, is here decided to conclusively establish a waiver.

Neither do I think there is any justification for construing a contract made by a mutual life insurance company differently from a contract made by a stock company engaged in the life insurance business. Considering the purposes for which this class of contracts are made, stability above all

things is desirable.    In my judgment it is neither just to the
insured nor expedient for the insurer that such contracts
should rest in uncertainty.    The holder of a policy in a mu-
tual life insurance company should feel that his contract is
just as inviolable as that made with any other insurer.    The
volume of this class of business is too large to be jeopardized
by anything bordering on a lax construction of such con-
tracts.    The authorities do not recognize any such distinc-
tion.    *Ins. Co. v. Connor,* 17 Pa. St. 136; *Covenant Mut. L.
Asso. v. Kentner,* 188 Ill. 431, 58 N. E. 966; *Becker v. Farm-
ers' Mut. F. Ins. Co.* 48 Mich. 610, 12 N. W. 874; *People v.
Security Life Ins. & A. Co.* 78 N. Y. 114, 125.

A motion for a rehearing was denied January 26, 1909.