## NATIONAL LIFE CO. v. WOLVERTON.

### No. 2491.

Court of Civil Appeals of Texas. Waco.

June 4, 1942.

Rehearing Denied July 2, 1942.

Coker, Rhea & Vickrey, of Dallas, and Sleeper, Boynton & Kendall, of Waco, for appellant.

Darden & Burleson, of Waco, and Chas. M. Harris, of Mart, for appellee.

HALE, Justice.

This is an appeal from an order of one of the district courts of McLennan County overruling a plea of privilege. The proceedings arose out of an action for damages on account of the alleged breach of a contract of life insurance. Upon issues properly raised by the pleadings, the trial court found and concluded that the suit came within each of the exceptions embraced in subdivisions 23, 27, 28 and 28a, respectively, of Article 1995 of Vernon's Texas Statutes. A correct disposition of the appeal turns upon whether the evidence adduced upon the hearing was sufficient to sustain the essential findings with respect to one or more of the four exceptions.

Under appropriate points in its brief, appellant contends that the proof was insufficient as a matter of law to establish the existence of a cause of action, or to show that such cause of action, if any, or any part thereof, arose or accrued in McLennan County, or that the suit was on a policy of life insurance, or that the action was brought against a state-wide mutual assessment company growing out of or based upon any alleged right or claim arising from or predicated upon any policy issued by it, all within the meaning of the venue statute. These contentions require an extended statement from the record.

Appellee, Charlie T. Wolverton, Sr., is now and has been continuously since the year 1902 a resident of Mart in McLennan County, Texas. On February 15, 1917, at the solicitation of J. P. Smith, he made application at his place of business in Mart on a printed form for membership and insurance in the National Life Association of Des Moines, Iowa, and paid the sum of $73.06 as the first annual premium on the policy applied for. It was agreed in said application, however, that the Association should incur no liability under the same until the policy had been issued by the Association and delivered to the applicant while in good health. At the same time appellee submitted to medical examination at the hands of a physician in Mart. Smith then transmitted the application, medical examination and premium payment to the Association at Des Moines, Iowa. On February 23, 1917, the Association issued its policy or certificate insuring appellee, who was then 55 years of age, in the sum of $2,000, payable to his wife as beneficiary. The certificate, with a copy of the application and report of medical examination attached thereto, was thereafter delivered by agent Smith at Mart, Texas, to appellee while in good health.

This certificate recites on its face that the insurance therein specified is granted in consideration of the application and medical examination and of the payment of $73.06 as a first annual payment and the payment of all subsequent amounts required under the contract during its continuance. The certificate further provides on its second page that after the first annual payment, the insured agreed to make subsequent annual payments: "(a) For the General and Benefit Funds, such amounts as may be levied by the Board of Directors of the Association, the entire Mortuary and Surplus Funds being pledged to maintain an annual rate therefor which is not in excess of $73.06; also the Reserve Fund may be drawn upon to maintain said rate, if the amount realized therefrom for Mortuary purposes is not sufficient. (b) For the Reserve Fund, the sum of fifty cents for each year of the insured's age, as stated herein, for each One Thousand Dollars of insurance carried, which amount shall be paid once only, and may be paid in installments as authorized by the Board of Directors, with five per cent annual interest. All savings, between the amount levied for the General and Benefit Funds in any one year, and the maximum rate for the said Funds, above stated, will be applied upon this Reserve Fund obligation, until it is paid in full."

National Life Association was a mutual assessment company exclusively at the time when it issued the certificate above referred to and it was then duly authorized to do business in Texas as such. On January 30, 1929, its charter was amended under the laws of the State of Iowa so as to authorize it under the name of National Life Company to thereafter continue its business as a mutual assessment company insofar as may be necessary to carry out all its contracts theretofore made with its members or policyholders, and in addition thereto, it was authorized by said amendment to thereafter transact the business of life insurance as a legal reserve or level premium company, and since that time it has transacted business in Texas in both capacities. Appellee paid to National Life Association and to appellant, National Life Company, respectively, the sum of $73.06 under his contract for each of the years from 1917 to and including the year ending February 23, 1941. On January 29, 1941, appellant notified appellee that his annual premium had been increased from $73.06 to $398.26. Thereupon appellee offered to pay the annual premium of $73.06, which appellant refused to accept, and hence this suit.

The records, reports and parol testimony introduced in evidence are too voluminous to be here set forth even in the briefest summary. While it was shown that there had been a substantial and steady decrease over a period of years in the assets of appellant belonging to its assessment members, such as appellee, it appears that said assets at the end of the year 1940 amounted to approximately Two Million Dollars. Nolan C. Phillips, a certified public accountant, testified at length as an expert witness with respect to the financial history of appellant as reflected by copies of its annual reports to the Commissioner of Insurance of the State of Texas. The substance of his testimony was that there was no necessity disclosed by these records for the increase of the premium as demanded by appellant. Perry Duncan testified that he had been engaged in the insurance business for twenty years and during that time had become familiar with rate structures; that all rates are based essentially upon the American Experience Tables of Mortality with interest calculations at the rate of 3 or $3\frac{1}{2}$ per cent. He testified to the amount of premium required to purchase various types of policies at given ages.

■ Without further statement, it must suffice to say the trial court found specifically on what we regard as sufficient evidence that the financial condition of appellant was not such as to demand or authorize an increase in the annual premium rate of appellee from $73.06 to $398.26 and that such increase was unnecessary and unreasonable. Conceding, without deciding, that appellant reserved the right under its contract to increase appellee's annual premium rate, an unauthorized attempt on its part to arbitrarily increase the assessments required to continue the policy in force constituted a repudiation on its part of the contract. Texas Mutual Life Ins. Ass'n v. Boyd, Tex.Civ.App., 89 S.W.2d 821, point 1 and authorities there cited. We therefore hold that the evidence and findings of the court were sufficient to give rise to some kind of a cause of action on behalf of appellee. What, then, were the rights and remedies involved, how did they originate and develop, and where did the asserted cause of action and the component parts thereof arise within the meaning of the venue statute?

■ By paying all prior premiums and assessments as they matured, appellee had acquired a vested right under his contract on and prior to January 29, 1941, to continue his policy in force so long as he lived by paying all premiums thereafter due according to the requirements thereof. The wrongful repudiation of such right made available to him either of two or more independent and inconsistent remedies, viz: (a) He was immediately entitled to stand on the contract and sue in equity for its specific performance, or (b) he was entitled at his election to accept the repudiation as an anticipatory breach of the contract, and then sue at law for the recovery of such damages as resulted from the wrongful rescission and cancellation. First Texas Prudential Ins. Co. v. Ryan, 125 Tex. 377, 82 S.W.2d 635; Grand Fraternity v. Nicosia, Tex.Civ.App., 41 S.W.2d 684; Washington Life Ins. Co. v. Lovejoy, Tex. Civ.App., 149 S.W. 398. By the institution of this suit in the manner in which the same was brought, appellee thereby evidenced an election on his part to mature and pursue the latter remedy.

■ Appellant insists that the contract of insurance was entered into in the State of Iowa because the application was accepted, the policy issued, and all future payments thereunder were to be made, in that state; that if it has wrongfully repudiated the same so as to give rise to an action against it as a legal reserve company, such repudiation occurred wholly within that state with the result that the asserted cause of action arose and accrued against it, if at all, in that state. Ordinarily a contract is deemed under the common law to have been entered into at the place where the offer or application therefor is accepted. It is also generally held that a cause of action accrues for the breach of a contract at the place where the breach occurs. However, in 1903 the Legislature of Texas enacted Art. 5054 of Vernon's Texas Statutes which modified the pre-existing common law rule and which has been continuously in force since that time. This article applies to legal reserve companies. It provides in effect that any contract of insurance payable to any citizen of this state by any insurance company doing business within this state, shall be held to be a contract made and entered into under and by virtue of the laws of this state, notwithstanding such policy or contract may provide that it was executed, and the premiums and policy should be payable without this state. By reason thereof, appellant is not entitled in its dual capacity as an assessment company and as a legal reserve company to urge successfully in its latter capacity that the policy at issue was and is an Iowa contract to be governed by the laws of that state. Atlas Life Ins. Co. v. Standfier, Tex.Civ.App., 86 S.W.2d 852, point 1, and authorities there cited.

■ Under the provisions of subdivision 23 of said Article 1995, appellee was authorized to maintain his suit against appellant as a private corporation in any county in which the cause of action, or a part thereof, arose. This court, speaking through Justice Alexander in the case of United States Pipe & Foundry Company v. City of Waco, 100 S.W.2d 1099, 1109, point 13, in its discussion of exception 23 in the venue statute, said: "A cause of action consists not alone of the genesis of the right but of the breach of the right, and in order to maintain the suit in some county other than that in which the corporation's principal place of business is located, it is necessary and only necessary that some part of the primary right, or some part of the transaction relating to the breach of that right, must have occurred in the county where the suit is filed. Stone Fort National Bank v. Forbess [126 Tex. 568], 91 S.W.2d 674; Savage v. H. C. Burks & Co., Tex. Civ.App., 270 S.W. 244; Mercantile Bank & Trust Co. v. Schuhart, 115 Tex. 114, 277 S.W. 621." We think the authorities cited amply sustain the proposition of law there announced.

■ In our opinion, the execution of the written application for the policy here involved, the medical examination in connection therewith, and the payment of the first annual premium thereon, all of which occurred in McLennan County, Texas, each constituted an integral part in the genesis of the violated right herein declared upon. These occurrences are each recited to be a part of the consideration moving to appellant for its entering into the contract and but for them presumably the application would not have been accepted and the policy issued in Iowa. The agreement in the application attached to the policy with respect to no liability until the policy had been delivered to appellee while in good health constituted a valid condition precedent which, as a matter of law, prevented

the contract from becoming operative in the first instance until such condition was complied with. American National Ins. Co. v. Lawson, 133 Tex. 146, 127 S.W.2d 294. This absolute barrier against any possible right or liability arising from or growing out of the contract was effectively removed by an affirmative act which occurred in McLennan County.

■ Moreover, while a wrongful repudiation of the contract by appellant in Iowa matured appellee's right to sue in equity for its specific performance, such act alone did not and could not constitute a rescission and cancellation of the contract. Roehm v. Horst, 178 U.S. 1, 20 S.Ct. 780, 44 L.Ed. 953; Supreme Council A.L.H. v. Lippincott, 3 Cir., 134 F. 824, 69 L.R.A. 803; Pollack v. Pollack, Tex.Com.App., 39 S.W.2d 853. It became necessary for appellee to accept such repudiation and acquiesce in the anticipatory breach of the contract and also to show damage and injury resulting therefrom as indispensable elements to any right of recovery on the cause of action here asserted. These necessary fact elements were unquestionably based upon occurrences which transpired in McLennan County, Texas.

■ We are, therefore, forced to the conclusion that in all events a substantial part of the asserted cause of action arose in the State and County where the suit was instituted within the purview of exception 23 of the venue statute. Western Wool Commission Co. v. Hart, Tex.Sup., 20 S.W. 131. Regardless of where the action accrued and whether the same as brought was or was not a suit on the policy, within the meaning of exceptions 27 and 28, we also think it is clear that such action grew out of a right arising from the policy contract within the meaning of exception 28a. But for such policy, appellee would have no cause of action of any kind against appellant in either of its two capacities and hence any right of recovery which he may now have must necessarily arise from and grow out of said contract. National Mut. Ben. Ass'n v. Maggard, Tex.Civ.App., 161 S.W. 2d 142; National Aid Life v. Self, Tex. Civ.App., 140 S.W.2d 606. Because we are thus of the opinion that the suit comes clearly within the exceptions embraced in subdivisions 23 and 28a of the venue statute, the judgment of the trial court is affirmed.