**G. & M. PRODUCTS CORPORATION,**
Appellant,

v.

**CLAYTON SPECIALTIES, INC., et al.,**
Appellees.

No. 14491.

Court of Civil Appeals of Texas.

Houston.

Feb. 4, 1965.

Ragan & Russell, Houston, Cooper K. Ragan, John L. Russell, Houston, of counsel, for appellant.

St. John Garwood, Jr., Houston, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, of counsel, for appellees.

WERLEIN, Justice.

Appellant brought this suit against appellees, Clayton Specialties, Inc., a corporation with its office and principal place of business in Corpus Christi, Nueces County, Texas, and Clayton Walters, C. A. Alphin and H. L. Graham, all residents of Nueces County, to recover commissions allegedly due it on account of sales promotion, sales managing and merchandising of appellees' product known as the "Roll-Oiler" and subsequently the "Bun Pan Oiler," and introducing such equipment to the baking industry, pursuant to an alleged oral agreement that appellant was to receive a commission of 20% of the gross receipts from the sale of the first 300 units of such equipment, the 20% commission on the Roll-Oiler being fixed at a straight $250.00 per unit on the gross sales price of $1,150.00.

Appellant sought to sustain venue in Harris County as to the corporation under Article 1995, Sub-sec. 23, Vernon's Annotated Texas Statutes, on the ground that the cause of action or part thereof arose in Harris County, and also on the ground that the corporation had a representative in Harris County; and as to the individual appellees appellant sought to sustain venue in Harris County under Article 1995, Sub-sec. 29a, V.A.T.S., on the ground that the suit was brought to pierce the corporate veil and hold all the appellees as necessary parties jointly and severally liable. From the order of the court sustaining the pleas of privilege of all the appellees, appellant has perfected its appeal.

The evidence shows that Gunner E. Thelander was the president of appellant, G. & M. Products Corporation, which was domiciled in Harris County, Texas, and that he represented such company in whatever transactions it had with the appellees. He testified at considerable length, both at the hearing on the plea of privilege and by deposition with respect to an oral contract or agreement that he claimed he entered into with appellees in behalf of appellant. He testified that one Billy Gilmore called him in the early part of July, 1959, at his home in Houston, and requested that he come to Corpus Christi to see a Roll-Oiler to determine if appellant would undertake to promote it; that he went to Corpus Christi, met Gilmore there and was introduced to Clayton Walters, and examined the Roll-Oiler; that the three men went at night to a motel in Corpus Christi, where he estimated what the Roll-Oiler could be sold for and discussed with Gilmore and Walters the possibility of his representing them in the United States and Canada; that he told them they could sell 500 of them, and discussed a tentative agreement and told them he knew a couple of bakeries in Lafayette, La. where they could put the machines on trial, and that he would check into the matter of his representing them; that on returning to Houston he discussed the matter with appellant's directors, namely, his wife and one Dr. Gribble, and then telephoned Walters from Houston on July 18, 1959, saying it was a deal and that he had revised the figure of 500 to 300 units; that he called Walters from Houston on July 27 relative to demonstrating two machines in Lafayette; that he learned from the deposition testimony of Walters that Clayton Specialties, Inc. was incorporated on July 28, 1959; and that the day after Labor Day Mr. Walters

came to Houston with two machines and they left for Lafayette to install and demonstrate the machines.

When asked what he agreed to do for the 20%, Thelander testified that he agreed to sell 300 machines principally by exposure and making them known to the bakery trade. He further testified that he had made certain trips and contacts with bakeries; that he had received a letter in November, 1959 asking him to come to Corpus Christi and that he there saw Mr. Alphin, Mr. Graham and Mr. Walters, but didn't discuss much of anything with them. In appellant's petition, however, it is alleged that in the latter part of October, 1959 appellant received a letter requesting its representative to attend a meeting in Corpus Christi on November 16, 1959, which he attended and " * * * there learned that the Defendants desired no longer to honor agreements first made by Walters with Plaintiff and subsequently by Clayton Specialties, Inc. at Houston * * *." He also testified that they wanted him to work for a $50.00 fee or commission on each machine sold, which he was unwilling to do. In a letter dated December 10, 1959 from C. A. Alphin, president of appellee, Clayton Specialties, Inc., to Thelander, it is recited that during Thelander's visit to Corpus Christi it was explained to him that the working arrangement with appellant had not proven satisfactory and was terminated as of that date; but that they were willing to pay him a $50.00 fee to demonstrate and sell Roll-Oilers to prospects he had furnished them.

Thelander testified in his deposition that it was his understanding of the deal made that night in the motor court with Walters that appellant was to be paid commissions on all sales whether or not it had anything to do with them, and that it had an exclusive sales agreement covering the United States and Canada, and that that was something which was said by word of mouth between him and Walters back in the motor court in July of 1959. When asked were there any other terms of the deal

worked out there in the motel in Corpus, he testified that as he recalled, all of the terms, practically, were worked out there, but that he didn't recall discussing the percentage given to co-ops, and that was the only thing that he didn't recall being brought up; that every other essential in determining the deal was settled there, and there was no mention made of a corporation by either Gilmore or Walters. He was then asked: "What I wanted to get at was: Did you or Clayton Walters or anybody else change your initial deal around any— make any changes in it? after your first meeting there at Corpus?" He answered: "No, sir."

In appellant's original and amended petitions, adopted in its controverting affidavits, it is stated:

" * * * in the latter part of October, 1959 Plaintiff received a letter from Clayton Specialties, Inc., signed by H. L. Graham requesting the representative of Plaintiff to attend a meeting in Corpus Christi on November 16, 1959, and Plaintiff's employee attended an informal meeting there in such month and learned that the Defendants Walters, Graham and Alphin, owners, stockholders and/or directors of Clayton Specialties, Inc., desired no longer to honor the agreements first made by Walters with Plaintiff and subsequently by Clayton Specialties, Inc., at Houston, Harris County, Texas * * *."

Appellee, Clayton Walters, testified that the only agreement made was to be mutually terminable at the will of either party, and that it was simply to "spot" a few experimental "Roll-Oil" machines in six or seven bakeries, to see how they performed. He testified: "I told him (Thelander) we weren't ready to go * * *. We just wanted some spots, about six or seven spots to set them in to work the bugs out of them * * *." He further testified: "I don't think it has ever been brought out that this agreement we had that night at the Sun

Valley Motel Mr. Thelander said himself— Mr. Gilmore said, 'Would you want some kind of contract in writing if you would do it?' He said, 'No, as long as you are satisfied with my work we will do it. When you are not satisfied, you can fire me. I don't want anything.'" He also testified that the agreement was strictly an experimental deal hatched up in three minutes, and it was a limited deal and not for 300 units; that the discussion came around to a possibility of 300 people in the United States that were making brown-and-serve rolls, and who could use the product if it was made properly, and that when Thelander called him relative to the Lafayette trip, Thelander told him that there were a couple of people there that were willing to try the machines and that "He didn't say anything about 300." When asked, "Didn't you and Billy Gilmore want to find out if this thing had a place in the market," he testified, "We hadn't got to that point yet. We were building one up trying to make it operate."

Mr. Thelander testified that he never knew Walters before the meeting on the night of July 13, 1959, and never knew that Clayton Specialties, Inc. was involved until he got his first commission check on September 30, 1959, and that he never met appellees Alphin and Graham until the meeting in November, 1959 in Corpus Christi where he was informed that they no longer intended to honor his agreement. Walters testified concerning a meeting with Thelander at Victoria. He wanted Thelander to meet appellee Alphin, who was helping organize the company to patent and manufacture the Roll-Oiler, and that Alphin drove with him, Walters, to Victoria and they met Thelander. Mr. Alphin testified that at such meeting the latter part of July he made it known to Mr. Thelander that he, Alphin, was going to be sales manager of the company, and that his (Thelander's) deal was to get out some 5 to 7 machines for trial purposes, and that " * * * when we had developed the machine, we would try to work out a sales contract with

him (Thelander) if he wanted to go along with us on that basis." He further testified that they had two machines out at that time and they were going to put out 5 to 7 machines, and run those machines for experimental purposes only, and then when they had a machine perfected and were ready to go on the market with it, they would work out a sales deal with appellant.

■ From the testimony hereinabove referred to, it is clear that appellees' version of the arrangement with Thelander bears little resemblance to that claimed by appellant. The court was warranted in accepting appellees' evidence and in finding that appellant had failed to establish that it had a cause of action which arose in whole or in part in Harris County, despite the fact that Thelander testified that after the meeting in the motor court at Corpus Christi, he called Walters from Houston and said it was a deal, thereby accepting Walters' alleged offer. Walters testified that Thelander did not tell him at the motor court that he was going to see some people that would handle the deal and that he (Walters) didn't know about Thelander talking to anybody associated with him to see if he could handle it. According to appellees, the tentative agreement made in the motor court in July, 1959 was merely to spot or locate from 5 to 7 of the roll-oilers for demonstration purposes and "to set them in to work the bugs out of them." There was evidence from which the court could find that appellant was suing upon an entirely different agreement from the one entered into and that the actual agreement was both made and breached in Nueces County where Walters authorized Thelander to go ahead and set up some machines for demonstration purposes, and that no part of the cause of action arose in Harris County.

The court could have found and concluded that appellant had been paid in full for the 7 machines used in demonstrations as testified by appellees. Thelander admitted being paid for 7 machines, one of which

had been set up in Harris County. He referred to such machines as "my seven were demonstrators." At the time Walters' deposition was given in June, 1963, he testified there were then in Harris County two roll-oilers, two bun pan oilers, and one special roll-oiler. The record, however, is silent as to when they were sold. It is undisputed that appellant was paid a commission on one roll-oiler set up in Houston.

Furthermore, if the agreement was as testified to by Thelander, it was made with Walters and Gilmore before Clayton Specialties, Inc. was incorporated. Gilmore was not made a party to this suit. We find nothing in the record specifically showing that Clayton Specialties, Inc. entered into any agreement with appellant or that it adopted any agreement allegedly made between appellant and Walters, except as might be inferred from the fact that it paid appellant a commission on 7 demonstrator machines, and after the company was incorporated Walters and Thelander in the latter part of August or first part of September took two demonstrators to Lafayette, La. If such action amounted to an adoption or ratification by Clayton Specialties, Inc. of the agreement entered into between appellant and Walters, the trial court could have found that any such adoption or ratification was of the oral agreement completely made in the motor court in July, 1959, as related by Walters and not the agreement asserted by Thelander.

■■ The law is well settled that a suit may be brought against a private corporation in any county in which the cause of action, or a part thereof, arose, and that the making of a valid contract and its breach, with resulting damage, gives rise to a cause of action in behalf of the aggrieved party. In Gleason v. Southwestern Sugar & Molasses Co., Tex.Civ.App.1948, 214 S.W.2d 640, the court said:

"Subdv. 23 of Art. 1995, Vernon's Tex.Civ.Stats, provides in effect that suits against a private corporation may be brought in any county in which the cause of action, or a part thereof, arose. The making of a valid contract and its breach, with resulting damages, gives rise to a cause of action on behalf of the aggrieved party. Consequently, within the meaning of the foregoing venue statute, such a cause of action arises in part within the county where the contract is made or were it is breached. Silvers Box Corp. v. J. E. Stone & Co., Tex.Civ. App., 248 S.W. 1104; United States Pipe & Foundry Co. v. City of Waco, Tex.Civ.App., 100 S.W.2d 1099; National Life Co. v. Wolverton, Tex.Civ. App., 163 S.W.2d 654; Panther Oil & Grease Mfg. Co. v. Schumaker, Tex. Civ.App., 166 S.W.2d 205."

It was also stated by the court in that case that a contract is made at the place where the offer of one of the contracting parties is accepted by the other party. See also El Laredo, Inc. v. Orr, Tex.Civ.App., 321 S.W. 2d 624; Alamo Products Co. v. French, Tex.Civ.App., 316 S.W.2d 765; Jackson Brewing Co. v. Clarke, Tex.Civ.App., 346 S.W.2d 149; Shamrock Oil & Gas Corporation v. Price, Tex.Civ.App., 364 S.W.2d 260.

■ The law is also well settled that a cause of action does not arise in the absence of proof by the plaintiff that a cause of action has arisen in his favor. In Victoria Bank & Trust Co. v. Monteith, Tex.Com. App.1941, 138 Tex. 216, 158 S.W.2d 63, 67, the Court said:

"A cause of action does not accrue or arise unless there is a cause of action. To prove that a cause of action has arisen in his favor a plaintiff must prove that he in fact has a cause of action. It was necessary, therefore, for the respondents Allison and others, plaintiffs in district court, when invoking this exception in subdivision 23 in order to defeat the plea of privilege, both to plead specifically and to prove facts showing that a cause of action arose in their favor against the defend-

ant. In Compton v. Elliott, 126 Tex. 232, 88 S.W.2d 91, the court rejected the theory that a plaintiff may defeat a plea of privilege by introducing merely enough evidence to prove the venue fact or facts prima facie, or to raise an issue, and that evidence offered by the defendant in contradiction of plaintiff's prima facie case [would] be disregarded. It was held that the venue facts alleged must be proven as the allegations of any other plea or in the usual way in which proof is required to be made by a party upon whom the burden of proof rests."

In Compton v. Elliott, Tex.Com.App., 126 Tex. 232, 88 S.W.2d 91, the court said:

"Since article 2008 authorizes appeal from the judgment sustaining or overruling the plea of privilege and contains nothing to indicate that the review by the appellate court shall be in any respect different from its review of any other case, the power of the Court of Civil Appeals in reviewing the fact findings of the trial court is the same as it is in any other appealed case. The certificate states that in this case the evidence on the issue as to the commission of the offense was sharply conflicting and was sufficient to support the trial court's finding in favor of the defendant. Such being the record, the finding of the trial court should not be disturbed."

See also Forester v. Foreman, Tex.Civ. App., 171 S.W.2d 190; Drexler v. Architectural and Commercial Sales, Tex.Civ.App., 375 S.W.2d 550; Davenport v. Cabell's, Inc., Tex.Civ.App., 239 S.W.2d 833, and Lone Star Gas Co. v. Martin Linen Supply Co., Tex.Civ.App., 301 S.W.2d 243, in which the court held that plaintiff has the burden of proving the same cause of action alleged by him and relied upon in his pleadings.

Findings of fact and conclusions were not requested or filed. The trial court evi-dently believed the testimony of the appellees and found that the agreement was not as testified to by Thelander; that the deal was to spot a few roll-oiler units and was terminable at will of the parties; that such deal was completely made in Corpus Christi and that no part of the cause of action arose in Harris County; that the agreement was terminated after 7 units had been placed, and that appellant was paid in full all commissions on those 7 units; that the only contract between the parties was that testified to by Mr. Walters which was made in the motor court in Corpus Christi in July of 1959 and that such agreement was terminated at the meeting in November, 1959 in Corpus Christi, and that if there was any breach of the agreement, it there occurred. We are of the opinion that there was ample evidence in support of the court's order sustaining appellees' plea of privilege.

█ It is well settled that every reasonable intendment must be indulged in favor of the judgment of the trial court and it should be affirmed if there is any evidence to support it upon any theory authorized by law. Banks v. Collins, 1953, 152 Tex. 265, 257 S.W.2d 97; James v. Drye, 1959, 159 Tex. 321, 320 S.W.2d 319, and cases therein cited. We have read the statement of facts and all the depositions, and it is our view that the holding of the trial court is not so against the great weight and preponderance of the evidence as to be manifestly wrong or unjust.

█ Since appellant has failed to prove that this suit may be lawfully maintained in Harris County as to Clayton Specialties, Inc. under Subd. 23 of Article 1995, V.A. T.S., it has, of course, also failed to establish that it may be maintained in Harris County as against any of the appellees under Subd. 29a, Article 1995, which provides that where there are two or more defendants in any suit brought in any county of this State and such suit is lawfully main-

tained therein as to any of such defendants, then such suit may be maintained in such county against all necessary parties thereto.

Judgment affirmed.